580 F.2d 264
 1978-2 Trade Cases 62,171, 1979-1 Trade Cases 62,486
 REUBEN H. DONNELLEY CORPORATION, Plaintiff-Appellant, Cross-Appellee,
v.
FEDERAL TRADE COMMISSION and Michael Pertschuk, Paul Rand
Dixon, Elizabeth Hanford Dole, Calvin J. Collier and David
Clanton, Individually and as members of the Commission,
Defendants-Appellees, Cross-Appellants.
 Nos. 78-1052, 78-1194.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 10, 1978.
Decided Aug. 2, 1978.
 
 George W. McBurney, Chicago, Ill., for plaintiff-appellant, cross-appellee.
 David C. Shonka, Atty., Washington, D. C., for F. T. C., defendants-appellees, cross-appellants.
 Before SWYGERT and TONE, Circuit Judges, and JAMESON, Senior District Judge.*
 SWYGERT, Circuit Judge.
 
 
 1
 The threshold and dispositive issue presented in this appeal relates to the venue provision covering suits against federal officers and agencies.
 
 
 2
 * On April 13, 1976 the Federal Trade Commission issued an administrative complaint against the Reuben H. Donnelley Corporation, a publishing company incorporated in Delaware with its principal place of business in New York. In its complaint the Commission charged that Donnelley's publishing policies for the Official Airline Guide, a bi-monthly publication which combines in one directory the passenger flight schedules and fares of all scheduled air lines in North America, violated section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1). More specifically, the Commission alleged that the manner in which the Guide displays the schedules and fares of the various classes of air carriers acts to the disadvantage of the smaller carriers and stifles competition within the airline industry.
 
 
 3
 Donnelley subsequently filed with the administrative law judge a motion to dismiss for want of subject matter jurisdiction. Donnelley asserted that because the Commission has no jurisdiction over air carriers under 15 U.S.C. § 45(a)(2), it also has no jurisdiction over the business of air carriers, the only commerce alleged by the Commission to be affected by Donnelley's publishing policies. On March 30, 1977, the administrative law judge issued an order denying the motion to dismiss, noting that Donnelley is not an air carrier and that the statutory exemption of the Federal Trade Commission Act applies only to air carriers.
 
 
 4
 On June 20, 1977 Donnelley filed this action in the United States District Court for the Northern District of Illinois against the Commission and each of its five individual commissioners. Donnelley sought to prevent the administrative hearings from commencing as scheduled, again asserting that the Commission lacked jurisdiction over its proceedings against it. The Commission moved to dismiss or, in the alternative, for summary judgment. It argued that venue was improperly laid in the Northern District of Illinois, that the district court lacked subject matter jurisdiction because Donnelley had failed to exhaust its administrative remedies before the Commission, and that, since Donnelley is not an air carrier, it and its activities are not statutorily exempt from the Federal Trade Commission Act.
 
 
 5
 The district court on October 31, 1977 rejected all of the Commission's contentions. The court held that venue in the Northern District of Illinois was proper under 28 U.S.C. § 1391(e)(1) because, in its opinion, the Commission is a resident of Chicago through its regional office.[1] The court also found that the Commission had exceeded its statutory authority in proceeding against Donnelley, and that Donnelley was therefore not required to exhaust its administrative remedies. Accordingly the court enjoined the Commission from pursuing its proceedings.[2]
 
 
 6
 The Commission thereafter moved for reconsideration of the October order, advising the court of our then recent opinion in Squillacote v. International Brotherhood of Teamsters, 561 F.2d 31 (7th Cir. 1977). Upon reconsideration, the district court on December 20, 1977 issued a second order in which it concluded that its original decision holding Donnelley's action within an exception to the exhaustion doctrine was erroneous in light of Squillacote. Accordingly the court vacated its October order and dismissed Donnelley's complaint for failure to exhaust administrative remedies. (In view of its holding, the court deemed it unnecessary to reconsider its prior ruling that venue was proper.) From that ruling Donnelley appealed and the Commission cross-appealed.
 
 II
 
 7
 At oral argument the parties agreed that venue is the threshold question. Venue in civil actions against federal officers and agencies is governed by 28 U.S.C. § 1391(e). That section provides that an action may be brought in any judicial district in which:
 
 
 8
 (1) a defendant in the action resides, or
 
 
 9
 (2) the cause of action arose, or
 
 
 10
 (3) any real property involved in the action is situated, or
 
 
 11
 (4) the plaintiff resides if no real property is involved in the action.
 
 
 12
 Donnelley argues that venue is proper under clauses (1), (2), and (4).
 
 
 13
 * Section 1391(e)(1) provides that venue is proper in any district in which "a (federal) defendant in the action resides." The district court concluded that because the Commission maintains a regional office in Chicago, it is a resident of the Northern District of Illinois and therefore venue is proper.[3] We disagree.
 
 
 14
 Prior to the enactment of § 1391(e) in 1962, a federal official or agency could be sued only at the place of official residence.[4] Under the prior practice, the Commission could be sued Eo nomine only in the District of Columbia. The district court believed that the enactment of § 1391(e) changed this practice. In its opinion, limiting the residence of a federal agency such as the Federal Trade Commission solely to the District of Columbia would defeat the congressional purpose of liberalizing the venue provision covering federal defendants.
 
 
 15
 The congressional purpose in enacting § 1391(e) was indeed to broaden the number of places where federal officials and agencies could be sued. The manner which Congress chose to effectuate this objective was by adding additional venue choices to a plaintiff, not by changing previously established definitions of residence. There is nothing in the statute or its legislative history which suggests that Congress also sought to allow a federal agency to be sued Eo nomine wherever it may maintain an office. To the contrary, the wording of the statute itself precludes such an expansive interpretation.
 
 
 16
 To hold that a federal agency can be sued Eo nomine wherever it maintains an office would, as a practical matter, render subsections (2), (3), and (4) superfluous. With the vast growth of the federal bureaucracy, federal agencies undoubtedly have offices in most, if not all, judicial districts. That being true, there would have been little need for the subsections dealing with the specifics of where the cause of action arose, where the plaintiff resides, and where relevant real estate is situated, if such an expansive interpretation of residency of defendant were intended by Congress. Moreover, such an interpretation would mean that a plaintiff could file a suit in any district regardless of how remote that district's contact may be with the litigation. "The venue statute was not intended to permit forum-shopping, by suing a federal official wherever he could be found, or permitting test cases far from the site of the actual controversy." Hartke v. Federal Aviation Administration, 369 F.Supp. 741, 746 (E.D.N.Y.1973).[5]
 
 
 17
 There is nothing inequitable in limiting the residence of a federal agency to the District of Columbia. That has been the settled law for decades. At least since 1962 plaintiffs have had three venue choices which were previously unavailable.[6]B
 
 
 18
 Donnelley alternatively argues that the cause of action arose in the Northern District of Illinois and therefore venue is proper under § 1391(e)(2). It takes this position for two reasons: first, the Official Airline Guide is published in the Chicago metropolitan area and the publishing policies which are alleged to violate the Federal Trade Commission Act were formulated there,[7] and second, the impact of any Commission action, for example, a cease and desist order, will be felt by Donnelley in Illinois.
 
 
 19
 Donnelley's first argument suffers from a basic flaw. It confuses its cause of action against the Commission with the Commission's cause of action against Donnelley. The subject matter of Donnelley's action arose when the Commission filed a complaint against Donnelley. The administrative complaint was issued in Washington, D. C. The administrative law judge, who Donnelley alleges improperly denied its motion to dismiss, resides in the District of Columbia. The administrative proceedings and hearing have been held in Washington. In short, all of the actions which underlie Donnelley's suit against the Commission took place in the District of Columbia.
 
 
 20
 Donnelley's second argument that the cause of action arose in the Northern District of Illinois because "any cease and desist order which Might be issued by the Commission against Donnelley and the (Guide ) would have its impact in the Northern District" presents a novel extension of the federal venue provisions. Federal courts have used a number of different approaches in determining the place where "the cause of action arose." See cases collected in Note, Federal Venue: Locating the Place Where the Claim Arose, 54 Texas L.Rev. 392 (1976). One such approach has been the place where the injury has occurred because injury is viewed as an essential element of a cause of action.[8] See, e. g., Maney v. Ratcliff, 399 F.Supp. 760, 766-67 (E.D.Wis.1975). The injury which Donnelley speaks of, however, is not the injury which comprises part of its present cause of action; rather it is the impact which may result at the end of the administrative proceeding. To base a venue determination on the possibility of some future administrative ruling approaches the question backwards.[9] We hold therefore that the cause of action did not arise in the Northern District of Illinois.
 
 C
 
 21
 Donnelley's final argument is that venue is properly laid under § 1391(e)(4), which provides that suit may be brought where "the plaintiff resides if no real property is involved in the action." Although Donnelley is incorporated in Delaware and has its principal place of business in New York, it argues that it resides in the Northern District of Illinois because the Official Airline Guide is published in the Chicago metropolitan area.
 
 
 22
 Because § 1391(e)(4) does not define residence we must look for guidance to § 1391(c), which defines corporate residence for purposes of venue as follows:
 
 
 23
 A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes.
 
 
 24
 Donnelley argues that this section applies to corporate plaintiffs as it does to corporate defendants, and that since it is doing business in the Chicago area, venue is properly laid in this case under § 1391(e)(4). The Commission, on the other hand, argues that § 1391(c) applies only to corporate defendants and that a corporate plaintiff such as Donnelley may sue only in the place of its incorporation. We believe the latter construction to be the better view.[10]
 
 
 25
 Donnelley first argues that to read § 1391(c) to refer only to defendant corporations would be to ascribe to Congress the anomalous intent of treating defendant corporations and plaintiff corporations differently. In support it cites Upjohn Co. v. Finch, 303 F.Supp. 241, 254 (W.D.Mich.1969), wherein the court stated:
 
 
 26
 To hold otherwise would create a paradoxical interpretation of § 1391(c) which would result in having corporate residence mean one thing to a corporate plaintiff and something entirely different to a corporate defendant. Nothing has been brought to the attention of this Court which would suggest that the Congress intended such a result.
 
 
 27
 We disagree with such reasoning for there are fundamental policy reasons for treating plaintiff and defendant corporations differently.
 
 
 28
 Historically, venue has been geared primarily to the convenience of the defendant rather than that of the plaintiff since it is the defendant who is being brought into court. Thus, for example, until 1966 a plaintiff in a non-diversity case had no choice of venue; he was restricted to the place where the defendant or all the defendants resided.[11]
 
 
 29
 More important is recognition of the underlying purpose for the enactment of § 1391(c). The Supreme Court, in an "unbroken line of decisions," declared that a corporation's residence for venue purposes was in the state of incorporation. See, e. g., Suttle v. Reich Brothers Co., 333 U.S. 163, 166, 68 S.Ct. 587, 92 L.Ed. 614 (1948). This interpretation had the harsh result of forcing plaintiffs to litigate their claims in remote districts. Section 1391(c) was enacted in 1948 to deny to corporations the ability to inflict injury or breach contracts and then force upon the injured parties the burden of finding where the business was incorporated and maintaining an action there. The provision "is quite obviously a response to a general conviction that it was 'intolerable if the traditional concepts of "residence" and " presence" kept a corporation from being sued wherever it was creating liabilities.' " Transmirra Products Corp. v. Fourco Glass Co., 233 F.2d 885, 887 (2d Cir. 1956).
 
 
 30
 Finally, to allow a corporation to sue in any judicial district in which it maintains an office no matter how unrelated the district may be to the controversy at issue would encourage forum shopping and would favor corporate plaintiffs over individual plaintiffs who have but one residence. See Manchester Modes, Inc. v. Schuman, 426 F.2d 629, 632 (2d Cir. 1970).
 
 
 31
 Donnelley also argues that to interpret § 1391(e)(4) as limiting the residence of a corporate plaintiff to the place of incorporation conflicts with the congressional purposes of § 1391(e), namely, to expand the number of judicial districts in which federal defendants can be sued. We believe Donnelley has again misconstrued the manner in which Congress chose to broaden the venue provision. It did so by providing for three new bases of venue; there is no legislative history to suppose that Congress also sought to redefine established concepts of residence.
 
 
 32
 We hold therefore that the residence of a corporate plaintiff for purposes of § 1391(e)(4) is restricted to the place of incorporation. As Donnelley is incorporated in Delaware, venue was improperly laid in the Northern District of Illinois.
 
 
 33
 We note that under our reading of § 1391(e)(4) a corporate plaintiff may still locate venue wherever any defendant resides, the claim arose, any realty involved in the suit is located, any corporate plaintiff is incorporated, or any individual co-plaintiff resides. These options include every district even remotely related to a legal controversy.
 
 
 34
 Because we hold that the district court did not have venue over this action, we do not reach the other arguments raised on appeal. The order appealed from is vacated and the district court is directed to transfer this cause pursuant to 28 U.S.C. § 1406(a) to the United States District Court for the District of Columbia.
 
 
 
 *
 The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation
 
 
 [1]
 Donnelley also claimed venue was proper pursuant to 28 U.S.C. § 1391(e)(2) and (4). The district court did not reach these contentions in view of its conclusion that the Commission resided in Chicago
 
 
 [2]
 The administrative proceeding was already in progress by this time. Upon being advised of the district court's order, the administrative law judge suspended the proceeding
 
 
 [3]
 Donnelley concedes that venue in the Northern District of Illinois cannot be based on the residence of the five individual commissioners named as defendants. The residence of a federal officer has always been determined by the place where he performs his official duties. Butterworth v. Hill, 114 U.S. 128, 132, 5 S.Ct. 796, 29 L.Ed. 119 (1885); Nestor v. Hershey, 138 U.S.App.D.C. 73, 90, 425 F.2d 504, 521 n. 22 (1969); Stroud v. Benson, 254 F.2d 448 (4th Cir.), Cert. denied, 358 U.S. 817, 79 S.Ct. 28, 3 L.Ed.2d 59 (1958). See also 1 J. Moore, Federal Practice P 0.142(7) at 1449 (2d ed. 1977). As all the commissioners reside in the District of Columbia, the question here is limited to whether the Commission itself can be said to reside within the Northern District of Illinois
 
 
 [4]
 There were several reasons why a federal defendant could be sued only in the District of Columbia. First, only the District Court for the District of Columbia had jurisdiction to issue a writ of mandamus compelling federal officials to perform duties owed to plaintiffs. Even if mandamus were not sought, plaintiffs were generally restricted to filing their suits in the District of Columbia. Prior to 1962, venue was governed by § 1391(b) which provided that suit could be brought only where all defendants reside. Often the doctrine of indispensable parties required that the head of a governmental department be joined as a party-defendant. As the vast majority of agency heads have their official residences in the District of Columbia, the venue provision required that suit be brought in the United States District Court for the District of Columbia. See generally (1962) U.S.Code Cong. & Admin.News at 2784
 To remedy this problem, Congress enacted the Mandamus and Venue Act of 1962, Pub.L. No. 87-748, 76 Stat. 744. Section one of this Act created 28 U.S.C. § 1361, giving all of the district courts jurisdiction of actions in the nature of mandamus to compel an agency or federal official to perform a duty owed to plaintiff. Section two of the act added 28 U.S.C. § 1391(e), creating three new bases on which venue may be rested. See Liberation News Service v. Eastland, 426 F.2d 1379, 1383-84 (2d Cir. 1970). See also Byse & Fiocca, Section 1361 of the Mandamus and Venue Act of 1962 and Nonstatutory Judicial Review of Federal Administrative Action, 81 Harv.L.Rev. 308 (1967).
 
 
 [5]
 Nor can we accept Donnelley's analogy to § 1391(c), which allows suits against corporations wherever they are "doing business." If Congress intended that a federal agency could be sued wherever it was "doing business," it could have easily expressed that intention by adopting language similar to that used in subsection (c)
 
 
 [6]
 Section 1391(e) did broaden the place where a federal official or agency could be sued in one minor respect. Under the previous venue provisions, 28 U.S.C. §§ 1391(a) and (b), an action was permitted only where All the defendant officials resided, which generally required that the suit be filed in the District of Columbia, See note 4, Supra. Under § 1391(e), suit is now permitted where Any federal defendant resides. This change, however, did not alter the definition of residence as the district court believed. Rather, it merely gives a plaintiff a choice which he did not have previously, I. e., when he sues both an agency Eo nomine and a local governmental official, he can file his action either in the District of Columbia or the judicial district where the local official resides. This change does not affect the outcome of this case as both the Commission and the five individual commissioners are all residents of the District of Columbia
 
 
 [7]
 The Commission disputes this claim and asserts that the publishing policies are made in New York at Donnelley's principal place of business. The district court made no finding of fact on this issue
 
 
 [8]
 We express no view as to the proper approach for determining the place where the claim arose as resolution of that question is not necessary here
 
 
 [9]
 In support of its argument Donnelley cites Brotherhood of Locomotive Engineers v. Denver & R.G.W.R.R., 290 F.Supp. 612, 616 (D.Colo.1968), Aff'd on other grounds, 411 F.2d 1115 (10th Cir. 1969). Because the plaintiff in that case resided in Colorado, venue was held proper under § 1391(e)(4). In dicta, the court also noted that the cause of action arose in the district because the "impact and operation of any such action (by the National Mediation Board, headquartered in the District of Columbia) would be felt in this district . . . ." Id. at 616. We decline to follow this view for the reasons noted above
 
 
 [10]
 This question was raised in Abbott Laboratories v. Gardner, 387 U.S. 136, 156 n. 20, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), but the Supreme Court refused to resolve the issue until the courts of appeals had an opportunity to address it. The five courts of appeals which have considered the question have been uniform in concluding that a corporate plaintiff may maintain an action under § 1391(e)(4) only in the state of incorporation. Data Disc Inc. v. Systems Technology Associates, Inc., 557 F.2d 1280, 1289 (9th Cir. 1977); American Cyanamid Co. v. Hammond Lead Products, Inc., 495 F.2d 1183, 1184-85 (3d Cir. 1974); Manchester Modes, Inc. v. Schuman, 426 F.2d 629, 630 (2d Cir. 1970); Carter-Beveridge Drilling Co., Inc. v. Hughes, 323 F.2d 417 (5th Cir. 1963) (Per curiam ); Robert E. Lee & Co. v. Veatch, 301 F.2d 434, 438 (4th Cir. 1961), Cert. denied, 371 U.S. 813, 83 S.Ct. 23, 9 L.Ed.2d 55 (1962). See also D. C. Electronics, Inc. v. Schlesinger, 368 F.Supp. 1029, 1032 (N.D.Ill.1974)
 
 
 [11]
 In 1966, 28 U.S.C. § 1391(b) was amended to include venue in the district in which the claim arose. Act of Nov. 2, 1966, Pub.L. No. 89-714, 80 Stat. 1111. Even today, however, residence of the plaintiffs is not a basis for venue in nondiversity cases under § 1391(b)