**ECC CORPORATION, Plaintiff,**

**v.**

**SLATER ELECTRIC, INC., and Lucerne Products, Inc., Defendants.**

**No. 70–C–1266.**

United States District Court,
E. D. New York.

July 14, 1971.

Giles C. Clegg, Jr., Houston, Tex., and Marvin N. Gordon, New York City (Sandoe, Hopgood & Calimafde, New York City, of counsel), for plaintiff.

Alfred P. O'Hara, Marie V. Driscoll, New York City, and Reese Dill, Cleveland, Ohio (Rogers, Hoge & Hills, New York City, and Merkel, Campbell, Dill & Zetzer, Cleveland, Ohio, of counsel), for defendant Lucerne Products, Inc.

Darby & Darby, New York City, for defendant Slater Electric, Inc.

### MEMORANDUM and ORDER

DOOLING, District Judge.

Defendant Lucerne has moved under Rule 12(b) to dismiss the action against it on the ground that personal jurisdiction has not been and cannot be obtained over it in the Eastern District of New York. The action is for a declaratory judgment. While the parties have mentioned the venue under 28 U.S.C. § 1391, they have not specifically discussed it and they appear to assume that subdivisions (a) and (c) do not raise substantially different questions concerning the place in which the claim arose and concerning doing business than the questions raised under Sections 301 and 302 of the New York Civil Practice Law and Rules.

The complaint as originally filed sought a declaratory judgment that United States Patent No. 3,328,676 and Reissue 26,119, owned by defendant Slater and licensed by it to defendant Lucerne in 1966, and Lucerne's Reissue 26,-267 were invalid, were not infringed by plaintiff's trigger speed control, had been abused, and, as to the Slater patent interests, had been licensed in violation of Section 7 of the Clayton Act, 15 U.S. C. § 18. An injunction against any attempt to enforce the patents against plaintiff or its customers was sought, along with an injunction against threats of enforcement against customers or potential customers. The Complaint as most recently amended adds two additional Lucerne patents, United States Letter Patent Nos. 3,389,365 and 3,536,973 (the latter patent issued in October 27, 1970), and a monopolization charge under Section 2 of the Sherman Act.

While plaintiff asserts in a general way that defendant Lucerne can be found to be doing or transacting business in New York within the meaning of CPLR § 301 and 15 U.S.C. § 22 (antitrust jurisdiction), the claim insistently advanced is that the license agreement between defendant Lucerne and defendant Slater was so far negotiated within the State of New York as to subject Lucerne to jurisdiction under either § 302 or § 22 on the theory that plaintiff's cause of action arose as a non-tortious one out of the negotiation of the license agreement in New York, or, viewed as an action in tort under the Anti-Trust Law arose in New York and constituted tortious misconduct of the kind visualized by CPLR § 302(a) 2.

For present purposes plaintiff and the defendant Lucerne must be considered as companies engaged in the manufacture of portable motor controls designed for use in electrical and other appliances and tools. Apparently both firms are interested in manufacturing solid-state motor controls, which include on-and-off switch elements, using semi-conductors, silicon controlled rectifiers, etc. which make possible radical miniaturization of complex control mechanisms. Defendant Slater owned United States Letters Patent No. 3,328,676 of June 27, 1967 and Reissue 26,119 (from No. 3,103,618 of September 10, 1963). In March 1966 Slater licensed Lucerne under No. 3,103,618 and under a then pending application on which Slater's patent No. 3,328,676 later issued. The license to Lucerne was exclusive (except for a non-exclusive license right of the General Electric Company) in the field of the making, use and sale of portable motor controls for use in or with tools and appliances.

Lucerne is an Ohio Corporation with its principal office at Hudson (Northfield), Ohio not far southerly of Cleveland. Plaintiff is a Texas Corporation with its principal place of business at Euless, Texas, not far westerly from Dallas. Defendant Slater is a New York corporation with its principal place of business in Glen Cove on Long Island in New York.

The present action was precipitated by Lucerne's sending a letter to plaintiff under date of September 4, 1970, accusing its Trigger Switch Device for use in portable electric tools such as an electric drill of infringing Lucerne's interest in Reissue 26,119, No. 3,328,676 and Reissue 26,267. Certain claims of Reissue 26,119 were held invalid in this Court on September 30, 1970, in Leviton Manufacturing Co. v. Slater Electric, Inc., 331 F.Supp. 395. On October 8, 1970, plaintiff filed the present action for a declaratory judgment of invalidity and non-infringement, claiming alleged patent misuse and illegality in Lucerne's acquisition of the patent right as an anti-competitive acquisition of assets proscribed by Section 7 of Clayton Act (15 U.S.C. § 18). As amended, the complaint adds the additional patents of Lucerne and expands the anti-trust charges to include the claims of monopolization based on an alleged increase of Lucerne's share of the portable motor control market from 50% to 80%; more specifically, plaintiff now avers a failure to sell its product to Black & Decker Corporation, a customer of Lucerne, because Black & Decker has declined even to consider plaintiff's product until the question of infringement of the Lucerne-Slater patents has been resolved; plaintiff avers also that a prospective customer, the Singer Company, received a visit in New York from Lucerne's patent counsel during which Lucerne's patent position was pointed out to Singer and plaintiff was charged with infringement; plaintiff alleges a second Singer episode in which Lucerne's president, during a plant visit at Singer in South Carolina, threatened to sue a Singer customer, Sears Roebuck and Co., if Singer bought the solid-state variable speed motor control developed by plaintiff.

Lucerne does not do in New York State any of the usual things on which a finding of doing business or of being "found" in New York is based. It has no local telephone number, no local office, no resident salesmen, and, substantially, appears to have only one New York customer, Rockwell Manufacturing Company, Syracuse, which, however, buys on-off switches and not motor controls invoking any of the patents in question. Lucerne buys some of its copper supplies from a Buffalo supplier. It advertises in the usual National Trade Publications, perhaps as many as five of them, and it supposes that these publications circulate in New York. Lucerne's president and vice president have called on Rockwell here in New York a couple of times in 1970. Lucerne's business seems mainly to be with manufacturers. It supplies to them components which they build into other equipment. The conclusion of fact from the affidavits

and the depositions would inevitably be that, viewed as a manufacturing and trading company, Lucerne is not "doing business" in New York or regularly transacting business in New York so as to be subject to personal jurisdiction under CPLR Section 301 or under Section 12 of the Clayton Act, 15 U.S.C. § 22.

The question comes down to whether the facts particularly related to the present action have conferred jurisdiction over Lucerne. The first of two matters essentially relied upon is the relationship established between Slater and Lucerne. It is argued that it was substantially negotiated in New York City, although it appears to be agreed, and it seems clear that Slater signed the final license agreement in New York and transmitted it by mail to Lucerne in Ohio and that Lucerne signed it in Ohio and returned a fully executed counterpart copy of it to New York.

The deposition of Mr. Matthews and the very much shorter testimony in depositions in another case of Saul Slater and Herbert Slater require the conclusion that in a single meeting in New York that may have taken as little as half an hour or may have taken as long as two hours Slater and Lucerne did agree on the essential terms of a license agreement that would be exclusive except as to General Electric for the portable motor controls field. Slater, inferentially, was not interested in trying to exploit the motor controls field; Lucerne was interested in doing so. It wanted an exclusive on the Slater device if it could get one, and it was willing to pay a substantial sum. That agreeable mating of interests evidently became clear very quickly, and agreement in principle was ready. Ultimately the money terms were a payment of $50,000 spread over ten years and a royalty of 4½% (reduced later in the year to 3%). The $50,000 figure and a royalty at least as low as 5% (after an initial request of 10%) were arrived at in the single meeting in New York, and the only really open questions were the final royalty amount—one half a percent less,

4½%—and possibly the mode of paying the $50,000. Lucerne agrees that the very first draft of license agreement mailed from New York to Ohio contained the $50,000 and the 4½% terms on which ultimately the agreement was signed. It is plain, that counsel, as so often, had work to do on whipping the license agreement into shape, but it is fair to conclude, and it is found as a fact, that the critical meeting of the contracting parties' minds on the principal heads of agreement with respect to the licensing arrangement was arrived at in New York at a single meeting held here among Mr. Saul Slater, Mr. Herbert Slater, Mr. Robert Keegan (of Darby & Darby), Mr. Benjamin H. Matthews of Lucerne, and Mr. Richard Egan, patent counsel to Lucerne.

It appears also that there had been discussion of a possible merger between Lucerne and Slater. Mr. Matthews indicated that the subject had been discussed in New York from time to time although not in the last two years before he testified in December of 1970.

The second of the two matters relied upon is that which in the end comes down to Lucerne's presenting through its patent counsel to Singer through its patent counsel in New York the idea that to buy plaintiff's controls might infringe the patents owned by Lucerne and Slater. That was, perhaps, not an unimportant meeting since it does appear that Singer either had or expected to have a customer in Sears Roebuck & Company, presumably for tools and appliances incorporating Singer portable motor controls.

■ If it can fairly be said that the plaintiff's causes of action arise from any business that Lucerne transacted in New York (CPLR § 302(a) (1)) or that the cause of action arises from Lucerne's commission of a tortious act in New York (CPLR § 302(a) (2)) comprised in the making of the agreement between Lucerne and Slater, then the case for jurisdiction, while marginal, is adequate. For Subsection 1 purposes Longines-Wittnauer Watch Co. v. Barnes

& Reinecke, Inc., 1965, 15 N.Y.2d 443, 456–457, 261 N.Y.S.2d 8, 209 N.E.2d 68, taken with American Eutec. Weld. Alloys Co. v. Dytron Alloys Corp., 2d Cir. 1971, 439 F.2d 428, 431–432, and Liquid Carriers Corp. v. American Marine Corp., 2d Cir. 1967, 375 F.2d 951, 954–956, make clear that if the corporate intention is through personnel of executive substance to come to the state to effect a purposeful and important activity on the corporation's part, and by doing so such personnel significantly advance the making of a corporate contract of importance, that activity and presence suffice as a basis for a later exercise of personal jurisdiction by the State of New York over the foreign corporation with respect to matters that can genuinely be said to arise out of the resultant contract notwithstanding that the signing of the contract takes place later at the domicile of the out of state corporation.

■ The question then becomes whether or not it can fairly be said that the causes of action sued upon arise from the New York transaction, Lucerne's substantial negotiation of the license contract between it and Slater. The answer must be in the affirmative. Lucerne seeks to exclude plaintiff from the right to make, use and vend a certain switch device by virtue of Lucerne's ownership of the right, derived through the license negotiation in New York, under Reissue 26,119 and Patent No. 3,328,676 to exclude all others except General Electric from the use of the devices of the Slater patents in the field of portable motors for use in or with tools and appliances. It is true that Lucerne relied also on its own Reissue 26,267, and it is certainly arguable that it would be equally if not more realistic to assert more simply that the declaratory judgment action arises out of plaintiff's manufacture and Lucerne's challenge to that activity launched from its own domicile. But the ultimate question is the validity of the patent rights; if Slater had not granted an exclusive license to Lucerne, the action would have had to be against Slater in New York, and, possibly, there is no other court in which the plaintiff can successfully commence a declaratory judgment action against both defendants. Slater is certainly a proper if not an indispensable party, and it is the source of the rights on which in part Lucerne relies for its defense and presumably its forthcoming counterclaim.

■ Viewing the negotiation of the Slater-Lucerne license in New York as, in addition, an act integral to the alleged violation of the anti-trust law, and, bearing in mind that no conspiracy is charged but, rather, the acquisition of the license right is itself treated as the tortious act which damaged plaintiff, it similarly follows that the case can be commenced here as against Lucerne under CPLR 302(a) (2). *Cf.* Albert Levine Associates v. Bertoni & Cotti, S.D.N.Y.1970, 314 F.Supp. 169; R.F.D. Group, Ltd. v. Rubber Fabricators, Inc., S.D.N.Y.1971, 323 F.Supp. 521, 524–525, 526–527. (Trade Secret Appropriation & Trademark Violation). Note: Fontanetta v. American Board of Internal Medicine, 2d Cir. 1970, 421 F.2d 355, 357–359; Courtesy Chevrolet, Inc. v. Tennessee Walking Horse Ass'n., 9th Cir. 1965, 344 F.2d 860, 864; Stanat Mfg. Co. v. Imperial Metal Finishing Co., E.D.N.Y.1971, 325 F.Supp. 794. *Cf.* United States v. Scophony Corporation, 1948, 333 U.S. 795, 806–808, 815–817, 68 S.Ct. 855, 92 L.Ed. 1091.

It is concluded that personal jurisdiction can properly be exercised over Lucerne in this case and its motion is accordingly denied. It is, therefore,

Ordered that the motion of the defendant Lucerne, Inc. for an order under Rule 12(b) dismissing the action against it on the ground that the court does not have personal jurisdiction over the said defendant is in all respects denied.