BASTILLE PROPERTIES, INC., Stephen DuBrul, Peter Nitze, Frank Stagen and Elliot Stein, Jr., Plaintiffs,

v.

HOMETELS OF AMERICA, INC., Robert E. Woolley and Robert E. Woolley d/b/a Hometels of America, Defendants.

79 Civ. 0623.

United States District Court, S. D. New York.

Aug. 22, 1979.

Anderson Russell Kill & Olick, New York City, James P. Heffernan, Andrew P. Brozman, New York City, of counsel, for plaintiffs.

Parker Chapin Flattau & Klimpl, New York City, Stephen F. Harmon, New York City, of counsel, for defendants.

## OPINION

ROBERT L. CARTER, District Judge.

This is a breach of contract case in which the individual plaintiffs allege that they were retained to write a financial report for the defendant, Robert Woolley, and his corporation, Hometels of America, Inc. Based on their retention, DuBrul, Nitze, Stagen, and Stein then established Bastille Properties, Inc. for the specific purpose of compiling the analysis. Plaintiffs indeed developed a report, a copy of which has been filed with the court as an *in camera* exhibit. Depending upon whose version of the facts is believed, defendants either refused to accept it or were never offered it. In any case, plaintiffs now sue for the agreed upon price or for the reasonable value of their labor. Defendants have moved to dismiss for lack of *in personam* jurisdiction, improper venue, and failure to join an indispensable party. In the alternative, they request transfer to Arizona under 28 U.S.C. § 1404(a). Finally, they claim that Bastille Properties, Inc. must be dismissed because it was misjoined.

### In Personam Jurisdiction

Neither the individual defendant nor the corporate defendant is a New York domiciliary. Nonetheless, plaintiffs argue that jurisdiction over the defendants is conferred by the New York long arm statute. They rely upon N.Y.C.P.L.R. § 302(a)(1) (McKinney) which provides for jurisdiction over non-domiciliaries on causes of action arising from their "transaction of any business" in New York. Plaintiffs contend that because Woolley came to New York to negotiate the contract in his individual capacity and in his role as president of Hometels, Inc., both he and the corporation are amenable to suit in New York.

On February 2, February 23, and April 4, 1978, Woolley came to New York to discuss his financial needs with plaintiff Elliot Stein, Jr. at a time when Stein was affiliated with Lehman Bros. Stein left Lehman Bros. at the end of May with the understanding that he could take the Woolley account with him. Thereafter, Woolley came to New York two more times to discuss financing with Stein. At the first meeting, on June 16, 1978, no particular agreement was reached. On July 17 and 18, 1978, Woolley and Stein "shook hands on a partnership." (Aff. of Elliot Stein, Jr., Ex. H). In between these meetings, plaintiffs travelled to Phoenix, Kansas City, and Miami to discuss the prospective deal with Woolley.

■ Entry into the state by a nonresident corporate officer, for corporate business purposes, will justify jurisdiction only over the corporation. *Merkel Assoc., Inc. v. Bellofram Corp.*, 437 F.Supp. 612, 617 (W.D. N.Y.1977); *Yardis Corp. v. Cirami*, 76 Misc.2d 793, 351 N.Y.S.2d 586 (Sup.Ct. Nassau Co. 1974). Yet it is clear from the *in camera* exhibit submitted to the court that the discussions between Woolley and Stein concerned both personal and corporate affairs. Thus the basic issue is whether Woolley's New York negotiations with Stein are transactions of business capable of supporting jurisdiction. If the negotiations are sufficient, jurisdiction exists over both Woolley and Hometels, Inc.

Defendants assert that the negotiations were not substantial enough to support jurisdiction in that they were "preliminary." Although the parties may have "sh[aken]

hands on a partnership," Woolley points out that he did not execute the contract until he returned to Arizona. Defendants also contend that the pre-June negotiations can not be considered because Woolley was then negotiating with Lehman Bros. Exclusion of these discussions would leave plaintiffs with only three meetings upon which to ground jurisdiction.

Under *Liquid Carriers Corp. v. American Marine Co.*, 375 F.2d 951, 955–56 (2d Cir. 1967), any contract negotiations evidencing a purposeful invocation of the laws of the forum state are transactions of business for purposes of the long arm statute. It does not matter whether the negotiations are preliminary, or whether the contract is executed in New York, or whether performance is contemplated for New York. *Moser v. Boatman*, 392 F.Supp. 270, 274 (E.D.N.Y. 1975); *ECC Corp. v. Slater Electric, Inc.*, 336 F.Supp. 148, 152 (E.D.N.Y.1971); *George Reiner & Co., Inc. v. Schwartz*, 41 N.Y.2d 648, 394 N.Y.S.2d 844, 363 N.E.2d 551 (1977); *Longines-Wittnauer Watch Co., Inc. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68, *cert. denied sub nom., Estwing Mfg. Co., Inc. v. Singer*, 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965); *Milton R. Barrie Co., Inc. v. Levine*, 54 A.D.2d 642, 387 N.Y.S.2d 627, 628 (1st Dept. 1976). It therefore seems that the application of N.Y.C.P.L.R. § 302(a)(1) does not necessarily depend upon the number of negotiating sessions or their proximity to the ultimate agreement; as long as the discussions "significantly advance the making of a corporate contract of inportance," it would appear that the participants had transacted business within the state. *ECC v. Slater Electric, Inc., supra*, 336 F.Supp. at 152. Although the fact that Woolley and Stein "shook hands on a partnership" in New York on July 18 may not have finalized the contract sued upon, it would indicate that the discussions of July 17 and 18 significantly advanced the making of an important contract. Accordingly, the motion to dismiss for lack of *in personam* jurisdiction is denied.

## Venue

Plaintiffs originally asserted that venue was proper in New York because all the plaintiffs reside in New York. Although Bastille Properties, Inc. is a Delaware corporation, they argued that its doing business in New York rendered it a New York resident. Defendant correctly responded, however, that for venue purposes corporate plaintiffs are residents only of the state of incorporation. *Manchester Modes, Inc. v. Schuman*, 426 F.2d 629 (2d Cir. 1970). To cure the defect in venue, plaintiffs have submitted a document showing that subsequent to the commencement of this suit, Bastille assigned its claim to Elliot Stein, Jr.

The assignment raised the novel question of whether collusive assignments expressly made for the purpose of creating venue are permissible. In an attempt to avoid this question, the court requested that the parties consider whether venue may nonetheless be proper here because the claim arose in New York. Unfortunately, the supplemental briefs filed on this point also reveal a rather close question. Since the propriety of venue under either rubric is not without doubt, the appropriate course seems to be to consider both possible bases.

### A. "Where all plaintiffs reside"

As noted above, all plaintiffs reside in New York if the assignment of the corporation's claim to Elliot Stein, Jr. is given effect despite its execution solely for the purpose of creating venue. The same problem arose with respect to Elliot Stein, Sr., a partner in the Bastille enterprise and Missouri resident who was not included as a plaintiff because his joinder would have destroyed venue in New York. Defendants asked that he nonetheless be joined as an indispensable party since he was a co-obligor on the contract. Plaintiffs again responded with an assignment of claim—this time from Elliot Stein, Sr. to Elliot Stein, Jr.

The question before the court, therefore, is whether the assignments for the purpose of maintaining venue in New York are val-

id or whether they must be rejected as collusive attempts to invoke the power of this court.

The only case directly on point holds that assignments for the purpose of creating venue are permissible. *Dixie Portland Flour Mills, Inc. v. Dixie Feed & Seed Co.*, 272 F.Supp. 826 (W.D.Tenn.1965), *aff'd*, 382 F.2d 830 (6th Cir. 1967). The court reasoned that 28 U.S.C. § 1359[1] prohibited only collusive attempts to create *jurisdiction* and that the residency requirement for venue, unlike the domicile requirement for diversity, was not jurisdictional. The defendants object to this holding on the ground that 28 U.S.C. § 1406(a)[2] requires a judge to dismiss or to transfer cases brought in a district where venue is improper. They argue that permitting a plaintiff to cure defects in venue by assignment of claim is not one of the alternatives contemplated by § 1406(a).

It seems to me that defendants' reading of § 1406(a) is unduly formalistic. That provision was intended to establish, beyond cavil, that the court in which a case had wrongly been filed nonetheless had the power to transfer it to a district in which venue was proper. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962); *Concession Consultants, Inc. v. Mirisch*, 355 F.2d 369, 371 n. 3 (2d Cir. 1966). I am aware of no statutory purpose that would be served by restricting the court's discretion to only the two cited alternatives—dismissal of the entire case or transfer. In fact, courts have on occasion ordered other kinds of dispositions if they appeared to be in the interests of justice. For instance, in *Rains v. Cascade Industries, Inc.*, 258 F.Supp. 974 (S.D.N.Y.1966) (Wyatt, J.) and *M. Dean Kaufman, Inc. v. Warnaco, Inc.*, 299 F.Supp. 722 (D.Conn. 1969), the case against only certain parties was dismissed so as to render venue in the original forum permissible. See also *De La Fuente v. I.C.C.*, 451 F.Supp. 867, 871 (N.D. Ill.1978). The net effect of the assignments at issue here is no different from a court order dismissing the action against the parties who destroy venue.

The defendants are not completely without protection from the possibility of "collusion." If they can show that the absent party is a "Person to be Joined if Feasible" within the meaning of Rule 19(a), F.R. Civ.P., then the court will order his joinder. Should his addition render venue improper, the remedies under § 1406(a) would presumably become available. Here, however, Bastille and Elliot Stein, Sr. are not persons to be joined if feasible and certainly are not indispensable parties. Their nonjoinder does not impede defendants' rights in any way. By fully surrendering any interest they might have had in the contract, they have made their presence unnecessary to afford complete relief to the parties. *Federal Deposit Insurance Corp. v. Huntington Towers, Ltd.*, 443 F.Supp. 316, 319–20 (E.D. N.Y.1977); Rule 19, F.R.Civ.P. Thus, since neither non-resident assignor is necessary to a just resolution of the dispute and since the assignments are valid despite their being calculated to create venue, New York is a proper forum.

B. "Where the claim arose"

■ Plaintiffs make two separate arguments in support of their contention that the cause of action arose in New York. First, they argue that since defendants are subject to jurisdiction here on a cause of action arising out of their transaction of business within the state, then the claim necessarily arose in New York for purposes of 28 U.S.C. § 1391(a). Second, they argue that under the "weight of the contacts," "most significant contacts," or the "sub-

1. 28 U.S.C. § 1359 reads as follows:
   A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court.

2. 28 U.S.C. § 1406(a) reads as follows:
   The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

stantial events" tests, the cause of action arose in New York irrespective of the decision regarding personal jurisdiction. See *Ghazoul v. International Management Services, Inc.*, 398 F.Supp. 307, 314 (S.D.N.Y. 1975) (Cannella, J.); *Honda Associates, Inc. v. Nozawa Trading, Inc.*, 374 F.Supp. 886, 892 (S.D.N.Y.1974) (Connor, J.); *United States ex rel. Flemings v. Chafee*, 330 F.Supp. 193, 194 (E.D.N.Y.1971), *aff'd*, 458 F.2d 544 (2d Cir. 1972), *rev'd on other grounds*, 413 U.S. 665, 93 S.Ct. 2926, 37 L.Ed.2d 873 (1973). Since I agree with the first contention, I need not consider the second.[3]

Plaintiffs argue that insofar as N.Y.C.P. L.R. § 302(a)(1) confers jurisdiction only where the cause of action sued upon "arises from" the defendant's transaction of business within the state, venue in federal court based on "where the claim arose" must be proper whenever *in personam* jurisdiction is available. Without explicitly considering the matter, at least two courts in this district have proceeded on the assumption that the "arising out of" requirements of the state's long arm statute and § 1391 were coextensive. *Car-Freshner Corp. v. Broadway Manufacturing Co.*, 337 F.Supp. 618 (S.D.N.Y.1971) (Tenney, J.); *McCrory Corp. v. Cloth World, Inc.*, 378 F.Supp. 322 (S.D. N.Y.1974) (Pollack, J.). On the other hand, when the matter was explicitly considered in *Honda Associates, Inc. v. Nozawa Trading, Inc., supra*, Judge Conner held:

> The underlying rationale of the venue statutes is entirely different from that of the "long arm" statutes. The venue statutes, of course, are designed to protect

the defendants from the inconvenience of defending actions in areas remote from their residences or, in the case of corporations, where they have significant activities. The "long arm" statutes, on the other hand, are designed to protect *plaintiffs* by allowing them to bring local suits against foreign defendants who have sought the protection of the local laws and must accept concomitant responsibility under them. The state laws affecting personal jurisdiction thus have no effect upon the interpretation of the federal venue statute . . . .

374 F.Supp. at 889. *See also* 15 Wright, Miller & Cooper, Federal Practice and Procedure § 3806 (emphasizing conceptual problem with equating *in personam* jurisdiction, a matter of state law, with venue, a matter of federal law).

As a matter of convenience, there is much to commend treating personal jurisdiction and venue identically. Professor Moore writes:

> This equation of the availability of compulsory process on a non-resident and proper venue under § 1391(a) would have three advantages. First it would minimize the number of instances in which a plaintiff is put to the election of foregoing protections afforded him by a state with sufficient connection with the subject matter to justify it in exercising compulsory jurisdiction over the defendant, or shifting the choice of a state or federal forum to the defendant. Second, in cases in which the defendant is sued in an inconvenient forum it would broaden the choices available under § 1404(a) as

---

**3.** At first blush, applying the venue rules irrespective of their relation to personal jurisdiction may appear to be the easier course. Nonetheless, both factual and legal questions conspire to render this route particularly thorny. First, there is a conflict in the cases about whether the place of performance of a contract or the place of its execution is the location of the most significant contact. *Compare M. Dean Kaufman, Inc. v. Warnaco, Inc.*, 299 F.Supp. 722, 724 (D.Conn.1969) with *Mendelson v. Fleischmann*, 386 F.Supp. 436 (S.D.N.Y. 1973) (Brieant, J.). If the latter controls, it would be necessary to decide the extent of the agreement reached in New York before Wool-

ley returned to Arizona. That question is vigorously contested. If the former controls (or if both tests are viewed as supplying important factors), it would be necessary to decide whether Arizona or New York was the contemplated place of performance. Such an inquiry would inevitably lead to a preliminary determination of the merits as defendants claim, in part, that plaintiffs' failure to do an onsite investigation of Hometels' Arizona operations amounted to a breach of the agreement. Thus, since the question of where the contract was to be performed is part of the dispute on the merits, the course chosen here seemed preferable.

interpreted in *Hoffman v. Blaski* [363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254]. Third, it would shift the issue in motions for transfer from the largely technical questions of which fact of perhaps many that underlie a claim marks the place at which the claim arose toward the considerations of convenience that underlie the venue concept. (Footnotes omitted.)

1 *Moore's Federal Practice*, ¶ 0.142 [5.–2] at 1430. However, the stumbling block to equating the "arising out of" tests has been the implication in § 1391 that each claim can arise in one and only one district. *See Moore, supra,* at 1431. There is no equivalent limitation in the law of personal jurisdiction permitting only one state to be the appropriate "long arm" forum.

Despite § 1391's reference to "*the* district" in which "*the* claim arose," there is ample precedent for holding that the text does not preclude the possibility that a claim can arise in more than one district. *Moore, supra,* at 1431–33. *Blau v. Tool Research & Engineering Corp.,* 330 F.Supp. 1374 (S.D.N.Y.1971) (Tyler, J.). In fact, at least one court has already adopted Professor Moore's expansive approach and another has noted it favorably in a case in which venue was sustained (and then later reversed) on other grounds. *Battle Creek Equipment Co. v. Roberts Mfg. Co.,* 460 F.Supp. 18, 21 (W.D.Mich.1978); *Great Western United Corp. v. Kidwell,* 577 F.2d 1256, 1273 (5th Cir. 1978), *rev'd sub nom. Leroy v. Great Western United Corp.,* —— U.S. ——, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979). Furthermore, even the courts that established the "weight of the contacts" and "most significant contacts" tests have refused to hold that a claim arises for purposes of venue in only one district. In *Honda Associates, Inc. v. Nozawa Trading, Inc., supra,* Judge Conner wrote:

I am deciding that the right given by Section 1391(b) to sue in any district "in which the claim arose" is not the right to sue where *any* part of the claim, however

small, arose. I need not decide which of the other two possible meanings (the *largest* part of the claim or a substantial part thereof) is the correct one, since neither would apply here.

374 F.Supp. at 892. In deciding that "the claim must be deemed to have arisen in the district where the contacts had been most significant," *Ghazoul v. International Management Services, Inc., supra,* 398 F.supp. at 315, Judge Cannella merely adopted the reasoning of Honda Associates. Thus, whether a claim may arise for purposes of § 1391 in more than one district appears to be an open question.[4]

It does no violence to either common sense or to the purposes of § 1391 to hold that "claims" may arise in more than one district. Claims, after all, are merely legal constructs; like corporations they can be "present" in more than one jurisdiction without defying the laws of nature. *See* Felix Cohen, "Transcendental Nonsense and the Functional Approach," 35 Columbia Law Review 809 (1935). In fact, including within the range of possible federal forums those in which *in personam* jurisdiction already exists can only help realize the purposes behind § 1391. *Moore, supra,* at 1430; Brieant & Scheindlin, "Venue in the Second Circuit: A Topic Whose Time Has Come," 43 Brooklyn L.Rev. 841, 844 (1977). I therefore hold that the existence of long arm jurisdiction based on defendants' transaction of business within New York is, without more, sufficient to support a finding that the claim arose in New York. *See Battle Creek Equipment Co. v. Roberts Mfg. Co., supra.* Accordingly, venue is proper in this court.

Defendants have voiced two sorts of objections to the position adopted here. The first is based on possible inconvenience to defendants generally and the second is based on the conceptual problem of parallelizing state and federal law.

---

4. In its recent decision in *Leroy v. Great Western United Corp.,* 99 S.Ct. 2710 (1979), the Supreme Court noted that the assumption that a claim may arise in only one district is occasionally "fictive." However, it declined to decide whether the statute nonetheless mandated adherence to the fantasy. *Id.* at 2717.

The "convenience" objection embodies the fear that equating personal jurisdiction with federal venue may create a tactical advantage for plaintiffs by increasing the number of possible forums. There seems to be little merit to this objection, however. Where personal jurisdiction is based upon a defendant's transaction of business in New York, I do not see any unfairness in considering New York as a statutorily permissible forum. First, the existence of personal jurisdiction means that the defendant could have been forced to appear in New York State court anyway. Also, the due process limitations on the exercise of long arm jurisdiction guaranty that no defendant will be required to appear in a jurisdiction where his attendance would offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940). Finally, transfer under § 1404(a) is always appropriate if it turns out that the forum made possible by the adoption of the state's jurisdictional "arising out of" test is particularly inconvenient. Thus, although the equation of the "arising out of" tests for venue and personal jurisdiction may increase the number of possible federal forums, it does so without prejudicing defendants.

While Judge Conner is right in noting that the venue and long arm provisions are intended to benefit different classes of litigants, the solution proposed here seems consistent with both purposes. Plaintiffs are guaranteed a federal forum in which personal jurisdiction exists over defendants, while, at worst, defendants may be asked to appear in a federal court located within a jurisdiction in which they were amenable to suit in state court. That result does not seem to interfere with any substantial rights granted defendants by the "arising out of" provision in § 1391.[5]

The "conceptual" objection posits that different tests must apply to the interpretation of the N.Y.C.P.L.R. § 302(a)(1) and 28 U.S.C. § 1391 because the statutes are the products of different sovereignties. As a preliminary matter, I note that the question of whether *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), requires that the interpretation of "where the claim arose" in § 1391 be governed by state law has only recently been definitively decided. In *Leroy v. Great Western United Corp., supra*, 99 S.Ct. at 2717 n. 15, the Court adopted the position that federal law governs the application of § 1391.

The holding that, under *Erie*, federal law governs the interpretation of the venue statute, however, is perfectly consistent with the finding that § 1391 nonetheless borrows the rule for "where the claim arose" from the state's long arm statute. There are many instances in which federal law incorporates by reference a state standard without completely surrendering its interpretation to state law. *Indiana ex rel. Anderson v. Brand*, 303 U.S. 95, 58 S.Ct. 443, 82 L.Ed. 685 (1938) (although generally a matter of state law, construction of contracts for purposes of the contracts clause subject to independent review according to

---

5. *Leroy v. Great Western United Corp., supra,* is not to the contrary. In that case, the Court reversed a finding that a claim arose in Texas out of actions taken by an Idaho official to enforce that state's takeover statute. The only link between his behavior and the state of Texas was the fact that some of the Texas solicitees might have been discouraged from tendering their shares by his actions. The Court reversed, noting that under the rationale of the Appeals court, the claim arose in every district in which an offeree resided. However, it expressly declined to decide whether Texas could have constitutionally exercised personal jurisdiction over the Idaho official pursuant to its long arm statute. It preferred to avoid what it referred to as a difficult constitutional question. *Id.* at 2715.

The nexus between New York and the claim alleged herein is nowhere near as attenuated as that in *Great Western*. Negotiations leading to a substantial agreement on the terms of the contract occurred here, and the plaintiffs performed the contract (at least in part) in New York. Where jurisdiction is based upon the transaction of business *within* the state from which the cause of action arose, there is no danger, as there was in *Great Western*, of the claim's arising in an inordinate number of states.

federal standards). Therefore, although products of different jurisdictions, the statutes may be interpreted along similar lines without undermining the integrity of the sovereignties which spawned them.

All that has been held is that the federal rule for where a claim arose incorporates the "arising from" test contained in N.Y.C. P.L.R. § 302(a). Therefore, once the jurisdictional test has been met, venue must also be appropriate. But the converse is not necessarily true; where a state has not extended its long arm jurisdiction, the federal "arising out of" test may well permit venue in a district where personal jurisdiction would not lie. Thus, although utilizing a state standard for purposes of consistency, federal law continues to be the governing law under *Erie*.

In sum, venue is proper in New York for two reasons. First, all plaintiffs reside in New York. Second, the cause of action arose here by virtue of personal jurisdiction over defendants on claims arising out of their transaction of business in New York.

*Transfer Pursuant to 28 U.S.C. § 1404(a)*

 The final issue is whether this action should nonetheless be transferred to Arizona for the convenience of the parties and witnesses.

> When a party seeks the transfer on account of the convenience of witnesses under § 1404(a), he must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover.

*Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978). Defendants merely assert that Arizona employees of Hometels of America, Inc. will testify to the value of the services actually performed by plaintiffs. Of course, a countervailing consideration is that the New York plaintiffs will testify to the substance of the negotiations and the circumstances surrounding the creation of the report.

The burden of proof is on the movant to show that the interests of justice would be served by transfer. *Harry Rich Corp. v. Curtiss Wright Corp.*, 308 F.Supp. 1114 (S.D.N.Y.1969) (Lasker, J.). It does not

seem to me that defendants have met their burden. The simple question is whether the inconvenience will fall on plaintiffs' or defendants' witnesses. Where the balance of convenience is in equipoise, plaintiffs' choice of forum should control. *American Contract Designers, Inc. v. Cliffside, Inc.*, 458 F.Supp. 735, 740 (S.D.N.Y.1978) (Cannella, J.). For that reason the motion to transfer the case to Arizona is denied.

The motion to dismiss for lack of personal jurisdiction, improper venue, and failure to join an indispensable party is denied. The motion to transfer to Arizona is also denied. The motion to dismiss Bastille Properties, Inc. because it was misjoined is moot inasmuch as it assigned its claim to Elliot Stein, Jr.