OCÉ–INDUSTRIES, INC., a
corporation, Plaintiff,

v.

Jim COLEMAN, an Individual, d/b/a Jim
Coleman Co., a sole proprietorship,
Defendant.

No. 79 C 689.

United States District Court,
N. D. Illinois, E. D.

April 7, 1980.

Richard A. Zachar of Pope, Ballard, Shepard & Fowle, Chicago, Ill., for plaintiff.

Samuel L. Boyd of Kelsoe & Boyd, Dallas, Tex., for defendant.

## MEMORANDUM OPINION

GRADY, District Judge.

Plaintiff Océ-Industries, Inc. ("Oce") filed this suit against one of its distributors, Jim Coleman Company ("Coleman"), to recover $180,267.89 for photocopy equipment, supplies and replacement parts ordered during November 1977 and February 1979. Plaintiff is a Delaware corporation with its principal place of business in Illinois. Defendant is a sole proprietorship doing business in Dallas, Texas. Jurisdiction of this court is based on 28 U.S.C. § 1332.

Defendant has filed a motion to dismiss for lack of personal jurisdiction or improper venue. In the alternative, he has sought the transfer of this action under 28 U.S.C. § 1404(a) to the Northern District of Texas, Dallas Division, where defendant has brought suit against the plaintiff concerning the same subject matter.

For the following reasons, we will deny the defendant's motion.

## Personal Jurisdiction

Personal jurisdiction over a nonresident defendant does not depend upon physical presence of the defendant within the state. Section 17 of the Civil Practice Act, Ill.Rev. Stat.1975, ch. 110, § 17, the so-called "long arm statute," establishes the standard for the exercise of personal jurisdiction over a nonresident defendant:

(1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:

(a) The transaction of any business within this State; . . . .

The Illinois Supreme Court has stated in *Nelson v. Miller,* 11 Ill.2d 378, 143 N.E.2d 673, 679 (1957), that the long arm statute reflects "a conscious purpose to assert jurisdiction over nonresident defendants to the extent permitted by the due process clause." *Accord, McBreen v. Beech Aircraft Corp.,* 543 F.2d 26, 28 (7th Cir. 1976).

The issue here is whether the defendant has had sufficient contacts with Illinois to satisfy requirements of due process and not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

In considering a challenge to its jurisdiction, this court may receive and weigh affidavits. *O'Hare International Bank v. Hampton,* 437 F.2d 1173, 1176 (7th Cir. 1971). While the burden of proof rests on the party asserting jurisdiction, for purposes of making such a determination, conflicts in the affidavits submitted by the parties must be resolved in favor of the plaintiff. *United States Railway Equipment Co. v. Port Huron & Detroit Railway Co.,* 495 F.2d 1127, 1128 (7th Cir. 1974); *O'Hare International Bank v. Hampton, supra,* 437 F.2d at 1176. In this case the

defendant has filed three affidavits of James Coleman, proprietor of the defendant-company, and two medical affidavits. The plaintiff has filed two affidavits of Robert Fortune, Director of Sales for the Copier Division of the plaintiff, and one affidavit of Edward Regal, the plaintiff's National Credit Manager since November 1976.[1]

■ Applying the above rules, the jurisdictional facts appear as follows: Defendant initially solicited business from the plaintiff, and a sales agency relationship was established in 1973 as a result of a meeting occurring in Illinois. Fortune Affidavit, May 2, 1979, ¶ 3. In late 1974 the defendant became a distributor for plaintiff for portions of the southern region, including Texas. This arrangement was at the behest of the defendant. Fortune Affidavit, May 2, 1979, ¶ 4. During the subsequent four years, Coleman his personnel in Texas initiated numerous phone conversations—ranging in the hundreds—to the plaintiff's headquarters in Illinois. Fortune Affidavit, May 2, 1979, ¶ 6. It was through these phone calls to Illinois that orders were placed for the plaintiff's products by the defendant. Fortune Affidavit, May 2, 1979, ¶ 9. Each order for goods gave rise to a separate contract of sale. Fortune Affidavit, May 2, 1979, ¶ 10; Regal Affidavit, ¶ 4. Goods were shipped from Illinois and payment was sent to Illinois. Fortune Affidavit, May 2, 1979, ¶ 3. Most significantly, the course of dealing between the parties included shipment of the goods f. o. b. *Chicago.* Regal Affidavit, ¶ 3. The defendant thus assumed the risk for the goods in Illinois from the point at which they were delivered to the defendant's carrier.[2] Finally, Coleman and his agents during the period 1973–1978 attended several Oce sales meetings each year in Chicago. Fortune Affidavit, May 2, 1979, ¶¶ 6, 8; Coleman Affidavit, June 28, 1979, p. 3.

By engaging in this continuing course of conduct with the plaintiff, whose facility was located in Lincolnwood, Illinois, the defendant "should have known that he might be liable to suit in Illinois if the bill were not paid." *Colony Press, Inc. v. Fleeman,* 17 Ill.App.3d 14, 308 N.E.2d 78, 80 (1st Dist. 1974); *see also, O'Hare International Bank v. Hampton,* 437 F.2d 1173, 1177 (7th Cir. 1971); *International Merchandising Associates, Inc. v. Lighting Systems, Inc.,* 64 Ill.App.3d 346, 20 Ill.Dec. 838, 380 N.E.2d 1047, 1051 (1st Dist. 1978) (pattern of telephone and mail contacts, as well as scattered personal visits to plaintiff's offices). Each sales contract was "accepted" in Illinois and the parties contemplated that plaintiff's performance would be completed there. *Colony Press, Inc. v. Fleeman, supra,* 308 N.E.2d at 80 (interpreting an f. o. b. Chicago contract).

These contacts are clearly sufficient to invoke the jurisdiction of this court under the Illinois long arm statute. The maintenance of this suit in this forum does not offend due process notions of fair play. Courts have, in fact, found personal jurisdiction based on significantly fewer contacts with the forum state than those presented here. The leading Illinois cases of *Colony Press, Inc. v. Fleeman, supra,* and *Cook Associates, Inc. v. Colonial Broach and Machine Co.,* 14 Ill.App.3d 965, 304 N.E.2d 27 (1st Dist. 1973), serve to illustrate this point. In both cases, jurisdiction was founded on a single act of contracting by phone to engage the plaintiff's services. In *Colony Press,* an Ohio-based defendant contacted the plaintiff, an Illinois printing company, in response to plaintiff's advertis-

---

1. Obviously, an affidavit which merely states that the affiant was "apprised of certain information" should be given little, if any, weight. *Transo Envelope Co. v. Murray Envelope Co.,* 227 F.Supp. 240, 242 (D.N.J.1964). Despite defendant's allegations, we feel satisfied that the sworn statements of Robert Fortune and Edward Regal, *to the extent that they are relied on by this court,* result from knowledge within their possession as officers of the plaintiff corporation.

2. Plaintiff's obligation, title and risk of loss in the goods ceased on their delivery to the carrier in Chicago. Sections 2–401(2)(a) and 2–509(1)(a) of the Illinois Uniform Commercial Code, Ill.Rev.Stat.1971, ch. 26, §§ 2–401(2)(a) and 2–509(1)(a).

ing. A proposed newspaper insert ad was sent to the defendants in Ohio for their review, and defendants returned the corrected copy to the plaintiff for printing. The completed advertisements were shipped to the defendants, f. o. b. Chicago. An action to recover payment followed. In *Cook Associates*, a Delaware corporation doing business in Michigan telephoned the plaintiff, an Illinois employment agency, in response to an advertising flier of the plaintiff. Plaintiff sued for its fee because the defendant employed someone as a result of this contact. The court held, as in *Colony Press*, that the single phone call was enough to constitute the "transaction of business" within the meaning of the Illinois long arm statute. *Cook Associates*, 304 N.E.2d at 31; *Colony Press*, 308 N.E.2d at 80. *Compare also, United States Railway Equipment Co. v. Port Huron & Detroit Railroad Co.*, 495 F.2d 1127 (7th Cir. 1974) (Illinois long arm jurisdiction exercised even though Illinois plaintiff initiated the business relationship); *Morton Environmental Land Systems, Ltd.*, 55 Ill.App.3d 369, 13 Ill.Dec. 79, 370 N.E.2d 1106 (1st Dist. 1977) (Illinois long arm jurisdiction exercised even though contract was accepted outside of Illinois).

Defendant relies principally on *Geneva Industries, Inc. v. Copeland Construction Corporation*, 312 F.Supp. 186 (N.D.Ill.1970), and *Wessel Company, Inc. v. Yoffee and Beitman Management Corp.*, 457 F.Supp. 939 (N.D.Ill.1978), in arguing insufficient contacts with this jurisdiction. These cases may be distinguished on three independent bases: They involved (1) the single sale of goods, (2) initiated by an out-of-state agent of the plaintiff, and (3) accepted in a nonforum state. *Wessel* distinguished *Colony Press* and *Cook Associates* on the latter two grounds.

Defendant's motion to dismiss for lack of personal jurisdiction is denied.[3]

*Venue*

Defendants contend that even if they were properly served with process in this action, the venue requirements were not met in the Northern District of Illinois. The relevant statutory provision, 28 U.S.C. § 1391(a), provides:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may . . . be brought only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose.

*Reuben H. Donnelley Corp. v. Federal Trade Commission*, 580 F.2d 264 (7th Cir. 1978), holds that a plaintiff corporation resides only in the district in which it is incorporated. Inasmuch as the defendant does not reside in Illinois, the only issue to consider is where the instant cause of action arose.

The test most frequently applied in establishing venue under the "claim arose" prong is the "weight of contacts" test. *See, e. g., Ghazoul v. International Management Services, Inc.*, 398 F.Supp. 307, 314–315 (S.D.N.Y.1975); *B. J. McAdams, Inc. v. Boggs*, 426 F.Supp. 1091, 1103 (E.D.Pa. 1977). This requires an assessment of the forum which has the most significant contacts with the cause of action. However, at least one judge has recognized that "[t]he cause of action for venue purposes can be said to arise wherever substantial material events took place." *United States ex rel. Flemings v. Chafee*, 330 F.Supp. 193, 194 (E.D.N.Y.1971) (Weinstein, J.) (interpreting

---

3. Although not cited by the parties, we feel compelled to distinguish the recent decision of the Seventh Circuit in *Lakeside Bridge & Steel v. Mountain State Construction Co.*, 597 F.2d 596 (7th Cir. 1979), *cert. denied*, — U.S. —, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980). The court there found no personal jurisdiction under the Wisconsin long arm statute because "[t]he principal contact relied upon . . . as a basis for jurisdiction is performance of contractual obligations by the plaintiff, not the defendant, in the forum state." 597 F.2d at

601. In its decision, the Seventh Circuit noted that such factors as the use of interstate telephone and mail services and the inclusion of a f. o. b. seller's plant contract provision were not *determinative* in finding the requisite minimum contacts. 597 F.2d at 603–604. However, in contradistinction to the instant case, *Lakeside Bridge* involved a *single* purchase order solicited by the *plaintiff* at *defendant's* headquarters, where defendant's officers or agents had *never* entered into the forum state. 597 F.2d at 597–598.

28 U.S.C. § 1391(e)), *aff'd*, 458 F.2d 544 (2d Cir. 1972), *rev'd on other grounds*, 413 U.S. 665, 93 S.Ct. 2926, 37 L.Ed.2d 873 (1973); *see also Bastille Properties, Inc. v. Hometels of America, Inc.*, 476 F.Supp. 175, 180 (S.D. N.Y.1979) (claim can arise in more than one district under § 1391(a)).[4]

Applying once again the rule that where the parties' versions of the facts conflict the plaintiff's affidavits shall be credited, we find the following contacts with Illinois in the instant case: the place where the individual contracts sued upon by the plaintiff were performed, the place where the contracted orders were accepted, and the place where the breach resulted because of the failure to make payment there. Without considering any additional nexus to the forum state, such as the place of negotiation of certain terms of the individual contracts (see Fortune Affidavit, May 2, 1979, ¶ 8), the instant claim can be said to have "arisen" in Illinois. *Compare Gardner Engineering Corp. v. Page Engineering Co.*, 484 F.2d 27, 33 (8th Cir. 1973) (place of performance is proper venue in contract action); *Océ-Industries, Inc. v. Three B Distributors, et al.*, 79 C 688, Mem. Op. at pp. 6–7 (N.D.Ill. August 13, 1979) (place where individual contracts performed, accepted, and where payment due proper venue); *Deering Milliken Research Corp. v. Textured Fibres, Inc.*, 310 F.Supp. 491, 500 (D.S.C.1970) (place where payment due proper venue in contract action).

█ As an alternative basis for decision, we find that because the defendant was subject to jurisdiction in this forum on a cause of action arising out of the "transaction of business" in Illinois within the meaning of the Illinois long-arm statute, this claim *necessarily* arose in Illinois (more particularly, the Northern District of Illinois) for purposes of 28 U.S.C. § 1391(a). The Illinois long-arm statute, *supra*, confers personal jurisdiction only where the cause of action sued upon is one "arising from" the defendant's transaction of business within the state. Several courts, while not expressly considering the matter, have assumed that the "arising out of" requirements of the similar New York long arm statute[5] and § 1391 are coextensive. *Car-Freshner Corp. v. Broadway Manufacturing Co.*, 337 F.Supp. 618 (S.D.N.Y.1971); *McCrory Corp. v. Cloth World, Inc.*, 378 F.Supp. 322 (S.D.N.Y.1974). Judge Robert Carter in *Bastille Properties, Inc. v. Hometels of America, Inc.*, 476 F.Supp. 175 (S.D. N.Y.1979), specifically adopted this approach. *See generally* his treatment of the issue at 476 F.Supp. 179–182. A leading commentator has also favored the parallel treatment of personal jurisdiction and venue. *See* 1 Moore's Federal Practice, ¶ 0.142[5.–2] at 1430. *But see, Honda Associates, Inc. v. Nozawa Trading, Inc.*, 374 F.Supp. 886, 889 (S.D.N.Y.1974) (disapproving approach); 15 Wright, Miller & Cooper, Federal Practice and Procedure § 3806 (emphasizing conceptual problem with equating personal jurisdiction, a matter of state law, with venue, a matter of federal law).[6] We adopt and commend this so-called "identity approach," which will allow courts to get away from the frequent hypertechnical weighing of "contacts" under § 1391. In cases where the forum is clearly inconvenient to the defendant, a § 1404(a) transfer may be considered.[7]

---

**4.** See also *Leroy v. Great Western United Corp.*, 443 U.S. 173, 99 S.Ct. 2710, 2717, 61 L.Ed.2d 464 (1979). In *Leroy*, the Supreme Court noted in passing that the assumption that a claim may arise in only one district is occasionally "fictive."

**5.** New York C.P.L.R. § 302(a)(1) [New York long arm statute].

**6.** Since Illinois extends its long arm jurisdiction to the outer limits of the federal due process clause, the test for personal jurisdiction is at least quasi-federal. *See Fisons v. United States*, 458 F.2d 1241, 1250 (7th Cir. 1972), *cert. denied*, 405 U.S. 1041, 92 S.Ct. 1312, 31 L.Ed.2d 581 (Illinois long arm statute "measured by federal standards"). *Accord, Chromium Industries, Inc. v. Mirror Polishing & Plating Co., Inc.*, 448 F.Supp. 544, 550 (N.D.Ill.1978).

**7.** Indeed, the finding of proper venue wherever personal jurisdiction may be exercised may yield a broader group of forums to be considered for 1404 transfer. *Hoffman v. Blaski*, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960), allows an action to be transferred only to a district where that action "might have

Under either approach, venue properly lies in the Northern District of Illinois.

*1404 Transfer*

Finally, defendant has moved to transfer this case to the Northern District of Texas, Dallas Division, under 28 U.S.C. § 1404(a), which provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

■ A moving party has a strong burden to show that another forum is more appropriate, and unless the balance strongly favors the defendant, plaintiff's choice of forum should not be disturbed. *Magnavox Co. v. Bally Manufacturing Corp.*, 414 F.Supp. 891, 892 (N.D.Ill.1976) and cases cited therein. Only if "none of the conduct complained of occurred in the forum selected by the plaintiff," should plaintiff's choice be given "minimal value." *Chicago, Rock Island & Pacific Railway Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955); *Brindle v. Chesapeake & Ohio Railway Co.*, 357 F.Supp. 1116, 1118 (N.D.Ill.1973).[8]

■ Subsequent to the filing of this lawsuit, the defendant brought suit against the plaintiff in the Northern District of Texas. The claims in that suit, arising out of the same contractual transactions as the plaintiff's cause of action here, allege breach of contract, breach of warranty, fraud and deceptive trade practices on the part of the plaintiff. Defendant relies upon the pendency of the Texas case as one reason for a transfer. In addition, defendant asserts that most of his witnesses are in Texas or that region and that he has compulsory process problems with witnesses if the ac-

tion is maintained in this district. Defendant also points to the disproportionate financial means of the plaintiff, certain medical problems of the proprietor of the defendant company, and the less crowded state of the Dallas federal court docket. We note that the action filed in this district could have been brought in the proposed transferee district.

■ Upon closer examination, defendant's justifications for transfer reduce to complaints of mere discomfort and annoyance. Defendant essentially concedes that the hardship to the parties in the respective forums can be analogized to a zero-sum game: convenience to one party in one jurisdiction is offset by inconvenience to the other. *See, e. g.,* Defendant's Motion to Dismiss or Transfer, p. 3. A transfer will not be ordered if the result is merely to shift the inconvenience from the defendant to the plaintiff. *Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); *Bastille Properties, Inc. v. Hometels of America, Inc.*, 476 F.Supp. 175, 182 (S.D.N.Y.1979).

Reviewing the specifics, the locus of the defendant's witnesses in Texas is countered by plaintiff's list of witnesses in Illinois. *See generally,* Fortune Affidavit, January 22, 1980. Defendant's counterclaims filed in Texas involve principally claims of misrepresentation (Defendant's Complaint, Counts I–VIII), and we cannot say that plaintiff's witnesses seeking to rebut statements of falsehood or deceit should not be considered. Nor does the defendant alone suffer the risk of compulsory process problems with non-party witnesses. The plaintiff has provided evidence to document this same claim. Fortune Affidavit, January 22, 1980, ¶ 5.[9] Defendant admits that dis-

---

been brought" for both personal jurisdiction and venue purposes.

**8.** While the deference given plaintiff's choice of forum under the common law doctrine of forum non conveniens was diminished with the enactment of the transfer statute, 28 U.S.C. § 1404, the plaintiff's choice must still be accorded substantial weight. *Securities and Exchange Commission v. First National Finance Corp.*, 392 F.Supp. 239, 242 (N.D.Ill.1975).

**9.** Although defendant points out that the mere number of witnesses is not a factor for consideration under § 1404(a) (Defendant's Supplemental Memo in Support of Motion to Transfer, p. 5), he proceeds to present his argument for the "convenience of witnesses" on this basis. See Deft's Supp. Memo. at p. 8; Coleman Affidavit, January 29, 1980, pp. 3–4.

covery difficulties of the same order exist regardless of where the case is tried. Defendant's Supplemental Memorandum in Support of Motion to Transfer, p. 13. Finally, while there is an indication that this suit could be more expeditiously heard in Texas (Defendant's Supplemental Memo, p. 12), given the rough equilibrium of the other factors, this alone is not enough to tip the scales.[10]

Defendant's motion to transfer the instant action to Texas is denied.

---

**10.** Wherever the claims of the present plaintiff and defendant are tried, discovery—recognized by the defendant to be "monumental" (Deft's Supp. Memo. at p. 13)—must still proceed. In fact, the duration of this discovery phase and other pretrial matters is likely to render moot the defendant's medical concerns. Mr. Coleman, the proprietor of the defendant company, has been advised to limit his travel during the first six months of 1980, because of a heart attack suffered in August 1979. (Dr. A. DeLarios Affidavit, September 24, 1979; Dr. M. DeLarios Affidavit, January 17, 1980).