**CHICAGO SILVER EXCHANGE,**
**Plaintiff,**

v.

**UNITED REFINERY, INC.,**
**Defendant.**

**No. 74 C 3613.**

United States District Court,
N. D. Illinois, E. D.

May 20, 1975.

Adam Bourgeois, Chicago, Ill., for plaintiff.

Frederic J. Artwick, Sidley & Austin, Chicago, Ill., for defendant, United Refinery, Inc.; E. H. Fankhauser, Cotro-Manes, Warr, Fankhauser & Beasley, Salt Lake City, Utah, of counsel.

## MEMORANDUM OF DECISION

JULIUS J. HOFFMAN, Senior District Judge.

This is an action in contract, with jurisdiction based upon diversity of citizenship, 28 U.S.C. § 1332. The plaintiff, Chicago Silver Exchange, is an Illinois corporation having its principal place of business in Chicago. The defendant, United Refinery, Inc., is a Nevada corporation, whose principal place of business is in Utah.

In count I of the amended complaint it is alleged, in substance, that on April 18, 1974, the plaintiff ordered the La-Salle National Bank of Chicago to transfer the sum of $20,000.00 to the First Security Bank of Utah as payment for an order placed by the Chicago Silver Exchange with United Refinery, Inc. for 5000 troy ounce silver ingots. The plaintiff contends that United Refinery, Inc. has received the payment, but has refused to fill either the requested order, or return plaintiff's money.

Count II of the amended complaint reasserts the principal allegations contained in count I, and further alleges, in substance, that the plaintiff has sustained damage from the defendant's "[w]ilfull and wanton tortious interference with contractual relationships," as well as from the "loss of customers and business and destruction of the company's good name through attack and accusations following the failure to fill orders."

The action is now before the court on the motion of United Refinery, Inc. to dismiss the complaint for lack of jurisdiction over the person of the defendant and for improper venue. In addition,

at page 14 of its memorandum in support of the motion, the defendant seeks, in the alternative, dismissal of count II of the amended complaint for failure to state a claim upon which relief may be granted.

Rule 4(e) of the Federal Rules of Civil Procedure provides that federal courts are to follow state rules regarding the assertion of *in personam* jurisdiction over non-residents to the extent that such rules are consistent with due process. Rosenthal & Co. v. Dodick, 365 F.Supp. 847 (N.D.Ill.1967). In the case at bar it is undisputed that if jurisdiction is to be sustained, it will be sustained pursuant to the so-called "Illinois Long-Arm Statute," Ill.Rev.Stat., ch. 110, § 17, which provides, in pertinent part, as follows:

(1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any such acts:

   (a) The transaction of any business within this State;

   (b) The commission of a tortious act within this State;

.   .   .   .   .   .

(3) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him is based upon this Section.

Although it is well settled that in enacting the long-arm statute the Illinois legislature intended to exert jurisdiction over non-residents to the extent permitted under the due process clause, O'Hare International Bank v. Hampton, 437 F.2d 1173 (7th Cir. 1973); Nelson v. Miller, 11 Ill.2d 378, 143 N.E.2d 673 (1967), sufficient "minimum contacts" must nevertheless exist in the forum state so that jurisdiction over non-resident defendants is reasonable and just according to traditional concepts of fair play and substantial justice. Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Since there is no set formula or rule of thumb for determining whether there are sufficient minimum contacts, short of ascertaining what is fair and reasonable in the circumstances of a particular case, Hutter Northern Trust v. Door County Chamber of Commerce, 403 F.2d 481 (7th Cir. 1968), the relevant inquiry, therefore, is whether the defendant engaged in some act or conduct by which it may be said to have invoked the benefits and protection of the law of the forum. Gray v. American Radiator & Standard Sanitary Corp., 22 Ill. 2d 432, 176 N.E.2d 761 (1961); Consolidated Laboratories, Inc. v. Shandon Scientific Co., 384 F.2d 797 (7th Cir. 1967).

In support of the motion, defendant contends that it was not amenable to service of process under the Illinois long-arm statute, because it was neither qualified to do business, nor transacting business in Illinois, and that the transaction upon which the amended complaint is based occurred outside Illinois.

Moreover, defendant has submitted the affidavit of Mr. Lynn Burr, the former president of United Refinery, Inc., in which he states, among other things, that he has never been in Illinois on business on behalf of United Refinery, Inc., nor has he ever contacted the plaintiff about business between plaintiff and defendant. Mr. Burr further states that his only contact with the plaintiff occurred prior to December, 1973, when he was employed by Associated Smelters, Inc., a Nevada corporation havings its principal place of business in Las Vegas. He also states that the only contacts between the Chicago Silver Exchange and United Refinery, Inc. were initiated by an officer of the Chicago Silver Exchange, Irving Dorfman, either by telephone calls from Florida or Illinois to

Utah or, on one occasion, by Mr. Dorfman's personal visit to Utah. Furthermore, Mr. Burr states that all business of United Refinery, Inc. is conducted f.o.b. Salt Lake City, Utah.

Thus, it is the position of the defendant that United Refinery, Inc. has not had the "minimum contacts" with Illinois necessary to sustain personal jurisdiction under the Illinois long-arm statute.

The plaintiff, on the other hand, alleges in the amended complaint, that from on or about December 1, 1972 to on or about April 18, 1974, plaintiff and defendant engaged in the purchase and sale of silver which was subsequently shipped to the plaintiff in Illinois. The plaintiff contends that these transactions also involved visits by Mr. Lynn Burr to Chicago.

In addition, to support the court's jurisdiction, plaintiff has submitted the affidavit of Mr. Irving Dorfman, the president of the Chicago Silver Exchange, in which he states, in part, that the initial contact between "the parties" was on or about December 1, 1972, and that in the spring of 1973 defendant's agent, Mr. Lynn Burr, president of United Refinery, Inc., came to Chicago to speak with him in person regarding silver transactions. He further states that thereafter, Mr. Burr was in Chicago several times on the same business, and that he and Mr. Burr spoke often by long-distance telephone about related matters.

At the outset, the court observes that the affidavits filed pursuant to the motion to dismiss contain contradictory factual allegations from which the court must decide the jurisdictional issue. For purposes of determining whether a *prima facie* case for *in personam* jurisdiction has been established, such conflicts must be resolved in favor of the plaintiff. United States Ry. Equip. Co. v. Port Huron & Detroit R.R. Co., 495 F.2d 1127 (7th Cir. 1974).

Thus, accepting the validity of plaintiff's allegations, for the purposes of this motion the facts would appear to be as follows:

In the spring of 1973, Mr. Lynn Burr came to Chicago to speak, in person, to Mr. Irving Dorfman regarding silver transactions. Thereafter, Mr. Burr was in Chicago several times on the same business, and that Mr. Burr and Mr. Dorfman spoke often by long-distance telephone about related matters.

Remaining uncontroverted, however, are the statements of Mr. Burr that United Refinery, Inc. was not incorporated until December, 1973, and that any contact with the plaintiff prior to that time was in his capacity as an employee of Associated Smelters, Inc., a Nevada corporation. (Neither Mr. Burr nor Associated Smelters, Inc. is a defendant in this action.)

Moreover, it is undisputed that United Refinery, Inc. is not authorized to do business in Illinios; has never had an office, branch, plant, or telephone listing in Illinois; did not solicit any business from the Chicago Silver Exchange; and did not invite any representative of the plaintiff to negotiate the alleged contract which is the basis for this lawsuit. There are also no allegations that United Refinery, Inc. originated any telephone calls to the plaintiff, or that during any telephone calls were terms negotiated or business solicited by United Refinery, Inc.

Therefore, since it has been held that "Section 17 [of the Illinois long-arm statute] clearly requires that the activities which are relied on to sustain jurisdiction must give rise to the suit in question, at least in part," National T.V. Sales, Inc. v. Philadelphia T.V. Broadcasting Co., 284 F.Supp. 68, 70 (N.D.Ill.1968), it would appear that the only pertinent contact the transaction sued upon has with Illinois is the placing of an unsolicited order by an Illinois corporation to a corporation in Utah, and the wiring of funds pursuant thereto by a Chicago bank to a Salt Lake City bank.

Under facts similar to those in the present action, the courts have generally held that such attenuated contact with the forum state is insufficient to establish the "minimum contacts" necessary to invoke the court's jurisdiction over a non-resident defendant pursuant to the Illinois long-arm statute.

In Desert Palace, Inc. v. Salisbury, 401 F.2d 320, 322 (7th Cir. 1968), for example, the court affirmed the ruling of the district court which concluded that:

".  .  . Personal jurisdiction over [the defendant] may only be assumed by virtue of his activity within or relating to the state. Certainly it cannot be said that his writing a letter and making a phone call to an Illinois corporation regarding a contract executed in Utah, which covered a Nevada resident, is sufficient contact with Illinois to justify this court in assuming personal jurisdiction over him."

This position was reiterated in Geldermann & Co., Inc. v. Dussault, 384 F. Supp. 566, 571 (N.D.Ill.1974) in which the court held that "letters, telegrams and phone calls do not amount to the 'minimum contacts' required."

Rosenthal & Co. v. Dodick, *supra,* provides another example in which the court refused to expand the scope of the Illinois long-arm statute in view of the defendant's limited contact with the forum. After observing that the

"[d]efendant made no personal visits to Illinois, sent no written communications to Illinois and placed no telephone calls to Illinois concerning the subject matter of this lawsuit,"

the court stated that

"[t]he unilateral action of plaintiff in sending confirmations and statements of account to defendant from its Chicago office rather than from its New York office cannot satisfy the requirement of minimum contact with Illinois because it is the acts of the defendant which are relevant."

[citing Hanson v. Denckla, 357 U.S. 235, [78 S.Ct. 1228, 2 L.Ed.2d 1283] (1958), and Fisons Ltd. v. United States, 458 F.2d 1241 (7th Cir. 1972)].

.    .    .    .    .    .    .

".  .  . Furthermore, if the mere payment of money or shipment of goods into Illinois were sufficient to confer longarm jurisdiction it would follow that the existence of a business relationship with an Illinois resident would automatically sustain Illinois jurisdiction. It is clear that no federal or state court would confer such a broad grant of personal jurisdiction." [citing Hanson v. Denckla, *supra*; Geneva Ind., Inc. v. Copeland Construction Corp., 312 F.Supp. 186 (N.D.Ill.1970); and Quartet Mfg. Co. v. Allied Traders, Inc., 343 F.Supp. 1302 (N.D.Ill.1972)].

Accord, Braasch v. Vail Associates, Inc., 370 F.Supp. 809 (N.D.Ill.1973).

Moreover, after examining the many cases cited by the plaintiff to support jurisdiction over the defendant, the court concludes that they are either inapposite or distinguishable on their facts. For example, in Cohan v. Municipal Leasing Systems, Inc., 379 F.Supp. 1022 (N.D. Ill.1974), which plaintiff cites as being "the most recent available case dealing with the problem as presented to this court," the court denied a motion to dismiss the complaint, but the facts disclose that, unlike the instant action, the contract and retainer, which were the subject matter of the action, were "solicited, negotiated and consummated" in Chicago, at the initiation of the defendant.

Similarly in Ziegler v. Henry G. Hodges and Houghton-Mifflin Co., 80 Ill. App.2d 210, 217, 224 N.E.2d 12, 15 (1967), the court sustained jurisdiction in an action in which "there was a continuous contact between the plaintiff and the defendant throughout their transactions." Moreover, in the opinion of the court, the defendant "purposefully and consciously solicited the contract," .  .  . "actively sought out the

plaintiff, an Illinois resident, and induced him to join in the preparation of a textbook." The defendant "was in continual contact with [the plaintiff] by mail and telephone," . . . "the offer was accepted in Illinois," and "defendant's assignment of ten percent of all royalties was forwarded by him to Houghton-Mifflin Co., in Illinois, was accepted by it in Illinois, and was honored by defendant from December 6, 1961 until October 22, 1963."

The balance of the cases cited by the plaintiff which involve the Illinois long-arm statute generally deal with situations where contact with the forum was initiated by the defendant and subsequent contacts were far more extensive.

The court, therefore, concludes that plaintiff has failed to establish the minimum contacts necessary to sustain *in personam* jurisdiction over the defendant pursuant to the Illinois long-arm statute.

Accordingly, the motion of the defendant to dismiss the complaint for lack of jurisdiction over the person of the defendant will be allowed.