JOSEPH W. JOHNSTON, Plaintiff-Appellant, *v.* THE UNITED PRESBYTERIAN CHURCH IN THE UNITED STATES OF AMERICA, INC., *et al.*, Defendants-Appellees.

First District (5th Division)    No. 80-2924

Opinion filed December 31, 1981.

Joseph W. Johnston, of LaGrange Park, for appellant, *pro se.*

Gordon B. Nash, Jr., and Michael E. Barry, both of Chicago (Gardner, Carton & Douglas, of counsel), for appellees.

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Plaintiff appeals the granting of defendants' motion to quash service of process for lack of *in personam* jurisdiction and the dismissal of his action without leave to amend. On appeal, he contends that his action was improperly dismissed because the evidence established that defendants transacted business in the State within the meaning of the Illinois long-arm statute.

It is alleged in plaintiff's complaint[1] that defendant United Presbyterian Church (Church) operates under the law of New York, and defendant William P. Thompson (Thompson) does business from the Office of the General Assembly of the Church in New York City; that both defendants submitted to jurisdiction under section 17(1)(a) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 17(1)(a)) by virtue of transacting business in the State through five subordinate units of the Church judiciary, called judicatories, by which the actions of each lower

---

[1] Plaintiff filed a virtually identical complaint in the Federal District Court for the Northern District of Illinois on November 2, 1979, but it was dismissed without prejudice.

judicatory are approved and adopted by those successively higher; that a contract, referred to as a "call" and establishing a "pastoral relationship" between plaintiff and the First Presbyterian Church of Geneseo, Illinois (congregation), commenced on November 1, 1953, and was approved and adopted by the Presbytery of Rock River (presbytery), a district organization with jurisdiction over the congregation; that the parties performed under the contract until 1971, with periodic salary changes being approved by the presbytery having jurisdiction; that the pastoral relationship was terminated "without reasonable cause" in 1971 by the congregation and with approval of the presbytery, which constituted breach of contract; and that plaintiff brought the present action after exhausting all remedies within the Church over an 8-year period.

Defendants were served with process in New York and filed a special appearance objecting to *in personam* jurisdiction (Ill. Rev. Stat. 1979, ch. 110, par. 20(1)) and moved to quash service. In support thereof, defendants attached an affidavit of Thompson which stated in substance that, except between 1939 and 1942, he was never a resident of the State; that he did not participate in any manner in the termination of plaintiff at the congregation; that the Church is a Pennsylvania corporation and neither owns property nor maintains an office in the State; that neither he nor the Church had any contact with plaintiff in the State regarding plaintiff's termination nor availed themselves of State law as to the actions attributed to them in the complaint. Also, in their supporting memorandum defendants asserted that, based on the Thompson affidavit, the Church does not transact business in the State.

Plaintiff filed an objection to the motion to quash and a supporting affidavit and memorandum. Defendants' motion was granted on October 27, 1980, and the action dismissed. Plaintiff then presented his "Objection to the Order of October 27, 1980," which was overruled, and his motion to amend the complaint was denied.

OPINION

Plaintiff initially contends that the trial court erred in granting defendants' motion to quash service of process and in dismissing the cause of action for lack of personal jurisdiction because defendants' contacts with the State, in the form of the transaction of business, were sufficient to subject it to the jurisdiction of the circuit court. Personal jurisdiction over nonresidents is acquired by means of section 17 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 17), the so-called "long-arm" statute, which provides in relevant part:

"(1) Any person, whether or not a citizen or resident of the State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his

personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:

(a) The transaction of any business within this State;

\* \* \*

(3) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him is based upon this Section."

The legislative intent of section 17 is to provide the means for asserting personal jurisdiction over nonresident defendants consistent with Federal due process requirements. (*Nelson v. Miller* (1957), 11 Ill. 2d 378, 143 N.E.2d 673.) To satisfy such requirements and thereby to bind defendant to an adverse judgment, it is necessary that defendant have certain minimum contacts with the forum State, so that requiring him to defend therein is reasonable and does not offend the " 'traditional notions of fair play and substantial justice' " (*International Shoe Co. v. Washington* (1945), 326 U.S. 310, 316, 90 L. Ed. 95, 102, 66 S. Ct. 154, 158, quoting *Milliken v. Meyer* (1940), 311 U.S. 457, 463, 85 L. Ed. 278, 283, 61 S. Ct. 339, 343), and, as further defined, the minimal contacts concept requires a showing that through some act "defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws" (*Hanson v. Denckla* (1958), 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 1298, 78 S. Ct. 1228, 1240). The standard set forth in *International Shoe* continues to be the test for determining if nonresident defendants are subject to the jurisdiction of a State's courts (*Shaffer v. Heitner* (1977), 433 U.S. 186, 53 L. Ed. 2d 683, 97 S. Ct. 2569), and those requirements "must be met as to each defendant over whom a state court exercises jurisdiction" (*Rush v. Savchuk* (1980), 444 U.S. 320, 332, 62 L. Ed. 2d 516, 527, 100 S. Ct. 571, 579).

■■ The principles of *International Shoe* are applied on a case-by-case basis (*Gray v. American Radiator & Standard Sanitary Corp.* (1961), 22 Ill. 2d 432, 176 N.E.2d 761), and thus the quality of the defendant's activities are evaluated in the full context of the circumstances presented (*Braband v. Beech Aircraft Corp.* (1978), 72 Ill. 2d 548, 382 N.E.2d 252, *cert. denied* (1979), 442 U.S. 928, 61 L. Ed. 2d 296, 99 S. Ct. 2857), in order to determine what is fair and reasonable (*Mergenthaler Linotype Co. v. Leonard Storch Enterprises, Inc.* (1978), 66 Ill. App. 3d 789, 383 N.E.2d 1379). Moreover, the phrase "arising from" in sections 17(1) and 17(3) has been construed as requiring that there be a sufficiently close relationship between the defendant's business activities in the State and the litigation against him. As stated in *Volkswagen Insurance Co. v. Whittington* (1978), 58 Ill. App. 3d 621, 625, 374 N.E.2d 954, 957:

"The foreign corporation's business within Illinois must be related

to the cause of action in question before section 17(1)(a) will confer personal jurisdiction. If none of this business gives rise, at least in part, to the cause of action in question, then no such jurisdiction exists."

In each case of contested jurisdiction, the burden of proving its existence rests upon the party asserting it. (*Stephens v. Northern Indiana Public Service Co.* (1980), 87 Ill. App. 3d 961, 409 N.E.2d 423.) In essence, therefore, a plaintiff asserting the presence of *in personam* jurisdiction over a nonresident defendant must, first of all, satisfy the minimum contacts requirement of section 17 and of due process; and, secondly, must demonstrate that the cause of action arose from the jurisdictional acts of defendant, as required by section 17. (See *Morton v. Environmental Land Systems, Ltd.* (1977), 55 Ill. App. 3d 369, 370 N.E.2d 1106.) We believe plaintiff has sustained his burden as to both criteria in the present case.

Concerning the jurisdictional acts of defendants, plaintiff alleged, and defendants do not deny, that the Church operates nationwide through its system of judicatories, whereby actions at the lowest level (the congregation) must be approved at each successive level of ascending authority, which are respectively the presbytery, synod and general assembly. Plaintiff also stated in an affidavit, *inter alia*, that the Synod of Illinois and the General Assembly of the Church subsequently approved and adopted plaintiff's call with the Geneseo congregation in 1954; that he had been a member of the Church since 1922 and at various times observed "the ways of representative Presbyterian agents of program"; and that in 1962, when he was a member of the General Council of the Synod of Illinois, the General Assembly required it to form a Committee on Ecumenical Relations. Furthermore, plaintiff stated in his reply to defendants' memorandum in support of the motion to quash that each higher judicatory of the Church ratifies the actions of the lower.

■■ With respect to Thompson, the record discloses a letter addressed by him to the Stated Clerk of the Synod of Illinois, dated February 15, 1972, but not mentioning plaintiff by name, wherein Thompson stated that judicial matters within the Church are governed by the Book of Church Discipline, and he directed that "the judicatory itself, in this case the Synod of Illinois, must decide whether it shall try the case in its judicial capacity or refer it to a judicial commission. Do not refer the complaint to the General Council." The record also contains an article from a publication entitled A.D. and dated June 1973, which states that Thompson "led a discussion on the role and responsibilities of deacons and trustees" at a training session sponsored by the Synod of Lincoln Trails at a conference center called Stronghold operated by that synod near Oregon, Illinois. Thus, it appears to us, and Thompson does not indicate otherwise, that his activities in the State in advising, instructing and directing sub-

ordinate Church members were at his initiative and on behalf of the Church. (*Cf. Hurletron Whittier, Inc. v. Barda* (1980), 82 Ill. App. 3d 443, 402 N.E.2d 840 (defendant's visits to Illinois were at request of and on behalf of plaintiffs, as their unilateral acts).) Furthermore, it is not prerequisite to a finding of transacting business under section 17 that defendants were physically present in the State (*Woodfield Ford, Inc. v. Akins Ford Corp.* (1979), 77 Ill. App. 3d 343, 395 N.E.2d 1131), and a single business transaction may be sufficient for personal jurisdiction (*Cook Associates, Inc. v. Colonial Broach & Machine Co.* (1973), 14 Ill. App. 3d 965, 304 N.E.2d 27). In our view, the activities outlined above on the part of both defendants here invoked the benefits and protections of Illinois law and were of such quality as constitutes the transaction of business under section 17.

We next consider whether plaintiff's cause of action arose from the jurisdictional acts of defendants. In this regard, plaintiff alleged that on November 1, 1953, the congregation established a pastoral relationship with him, which was subsequently approved and adopted by the presbytery in its jurisdictional capacity over the congregation; that the presbytery also approved periodic salary changes for plaintiff until 1971 when the congregation, with the approval of the presbytery, terminated the pastoral relationship "without reasonable cause"; and that plaintiff thereafter sought remedies within the Church and did not bring the present action until such remedies were exhausted. Moreover, in his affidavit, plaintiff asserts that his contract with the congregation was not valid until successively ratified and adopted by the presbytery, synod, and general assembly; that those bodies thus became "parties" to the contract in 1954 and to the breach by their actions in 1972 and following. Finally, the record includes a letter signed by the Associate Stated Clerk of the Church, dated April 2, 1971, and addressed to a presbyterian minister in Taylor Ridge, Illinois, wherein it is stated that "the Presbytery must dissolve any pastoral relationship"; that approval of such dissolution should be made known in advance to various parties; and that he approved of the congregation's willingness to pay plaintiff's salary through December 31, 1971.

As to Thompson, plaintiff stated in his affidavit that he (Thompson) was present at a training session at Stronghold in Oregon, Illinois, from March 16 to 18, 1973; and that on March 18, plaintiff drove Thompson from Stronghold to Elgin, Illinois, while they "carried on the business of the United Presbyterian Church regarding [plaintiff's] judicial case." Finally, the record contains the notes of a telephone conference on September 27, 1976, concerning plaintiff, in which Thompson participated. Those notes state in substance that the General Assembly directed its Office to consult with and direct the "Presbytery of Great River(s)" to

consider the standing of plaintiff as a minister and "to transmit any future communications and petitions" from plaintiff to the General Assembly back to plaintiff's presbytery "without attention or comment." Thompson also took part in the discussion of various courses of action concerning plaintiff during that conference.

In contrast to plaintiff's position, Thompson stated in his affidavit that except for a brief period he had never been a resident of Illinois. He did not deny, however, that he was never physically present in the State to transact the business of the Church or that he transacted it by telephone or mail. The affidavit also stated that the Church neither owned property nor maintained an office in the State, but it did not deny the claim that the Church transacts business here. Moreover, while Thompson stated that neither he nor the Church had contact with plaintiff regarding the termination, he did not negate his participation on behalf of the Church in the telephone conference with Church members in Illinois concerning plaintiff's standing. The record also compels us to conclude that the Church guided and controlled the relationship between plaintiff and the congregation in all essential matters of the pastoral relationship and stood both as mediator and final arbiter throughout. Thus, we think it clear that defendants' activities indicate a sufficiently close relationship to the litigation against them and, at least in part, gave rise to it. Requiring defendants to defend in Illinois is reasonable and consonant with the orderly administration of justice (*Hanson v. Denckla* (1958), 357 U.S. 235, 2 L. Ed. 2d 1283, 78 S. Ct. 1228), and therefore, we hold that as the cause of action alleged herein arose from defendants' activities in the State, *in personam* jurisdiction was present, and in view of the foregoing, we find that the trial court erred in quashing service of process. Inasmuch as the trial court's dismissal of the action was based on lack of personal jurisdiction, it follows that this ruling also was error.

For the reasons stated, the orders are reversed and the case is remanded.

Reversed and remanded.

LORENZ and MEJDA, JJ., concur.