**NTN BEARING CORPORATION OF AMERICA, Plaintiff,**

v.

**CHARLES E. SCOTT, INC., Defendant.**

**No. 82 C 3830.**

United States District Court,
N.D. Illinois, E.D.

Feb. 28, 1983.

---

Jerome W. Pope, Winston & Strawn, Chicago, Ill., for plaintiff.

Gerald G. Salmen, Leon L. Wolf, Smith & Schnacke, Cincinnati, Ohio, for defendant.

## MEMORANDUM OPINION

WILL, District Judge.

This matter is before us on defendant's motion to dismiss the complaint for lack of personal jurisdiction and improper venue or to transfer the suit to the Southern District of Ohio in the interest of convenience to the parties and witnesses, *see* 28 U.S.C. § 1404(a). For the reasons which follow, we deny the motion to dismiss or transfer.

## FACTS

Our summary of the facts is based in part on affidavits submitted by the parties, the conflicts in which have been resolved in favor of the plaintiff. *See O'Hare International Bank v. Hampton,* 437 F.2d 1173, 1176 (7th Cir.1971); *Océ-Industries, Inc. v. Coleman,* 487 F.Supp. 548, 549 (N.D.Ill. 1980).

In 1969, Charles E. Scott (Scott), president and principal owner of defendant, met with the president of NTN Bearing Corporation of America (NTN) at NTN's Illinois offices, in an effort to reach an agreement under which Charles E. Scott, Inc. (Scott, Inc.) would be made a sales representative for NTN. Such a contract was executed, taking effect on January 1, 1970. During 1970 and continually through 1974, Scott made various visits to NTN's Illinois offices. The parties have not stipulated the number of such visits but NTN estimates the number at approximately six per year, for a total of some thirty visits.

Late in 1974, NTN decided to attempt to standardize its contracts with its sales representatives. The terms of the standard form contract developed by NTN differed in certain respects from the earlier contract between NTN and Scott, Inc. A copy of the standard form contract was sent by NTN to Scott, Inc., along with a cover letter requesting Scott, Inc.'s acceptance of the new contract, which would supersede the earlier contract with NTN. Scott, Inc. accepted the new contract and returned it, signed, to NTN. The new contract was effective as of January 1, 1975. From 1975 through 1979, following execution of the new contract, Scott continued to visit the NTN offices in Illinois. NTN has estimated that Scott made at least two or three such visits each year.

NTN and Scott, Inc. undertook to negotiate still another contract, to take effect in 1980. Such negotiations failed to lead to agreement between the parties and eventually the 1975 sales representative contract was terminated. Following termination of the contract a dispute arose concerning Scott, Inc.'s right to be paid certain commis-

sions allegedly due under the contract. The commissions relate to three accounts located in three different states—Ohio, Kentucky and Alabama. In consequence, NTN has filed this diversity suit seeking declaratory judgment as to its obligations under its 1975 contract with Scott, Inc. The latter has countered with a motion to dismiss NTN's suit for lack of personal jurisdiction over it. Further, in the event that we find jurisdiction in this district, Scott, Inc. seeks transfer of the action to the Southern District of Ohio. It argues that venue is improper in the Northern District of Illinois and that the Southern District of Ohio is both a proper and a more convenient forum.

## JURISDICTION

■ This is a diversity suit. Accordingly, we have jurisdiction only if an Illinois state court could exercise jurisdiction. Fed.R. Civ.P. 4(e), *Chicago Silver Exchange v. United Refinery, Inc.,* 394 F.Supp. 1332, 1334 (N.D.Ill.1975). Exercise of jurisdiction by Illinois state courts is dependent upon not only the Illinois long-arm statute, but also the constitutional due process requirement that the defendant have at least minimum contacts with Illinois such that the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. State of Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

We turn first to the Illinois long-arm statute, under which Illinois courts may assert jurisdiction over out of state defendants in causes of action arising from certain enumerated acts, performed by the defendant, including the "transaction of any business within this State." Ill.Rev.Stat. ch. 110, § 17(1)(a).

■ We find that Scott, Inc. did transact business in Illinois within the meaning of the Illinois long-arm statute. Scott personally made many visits to plaintiff's offices in Illinois. Defendant has not asserted that these visits were social calls. Defendant does not claim that it was brought from Ohio to Illinois by force or trickery, nor does it suggest that by chance and accident

its principal made regular appearances at plaintiff's offices in Illinois. Indeed, defendant does not dispute that Scott's visits to NTN's offices were business calls and that the business between the parties was governed by the contract. That contract provides, in paragraph 2, in part, that Scott, Inc. "will diligently promote the sale of NTN products in the designated territory." Paragraph 3 of the contract provides that Scott, Inc.'s commissions shall be based in part upon NTN's "appraisal of [Scott, Inc.'s] participation" in the sales. Defendant came to Illinois to enable it, under the contract, effectively to promote plaintiff's products, consequently increasing its own commissions.

Under the Illinois long-arm statute, as applied by Illinois state courts, plaintiff's claim "arose from" defendant's actions in Illinois. The Illinois long-arm statute was enacted in 1956, after *International Shoe,* with the conscious purpose to assert jurisdiction over nonresidents to the maximum extent permitted by the due process clause. *Nelson v. Miller,* 11 Ill.2d 378, 389, 143 N.E.2d 673 (1957). The term "arose from" as used in the Illinois long-arm statute is liberally construed by Illinois courts. In *Volkswagen Insurance Co. v. Whittington,* 58 Ill.App.3d 621, 625, 16 Ill.Dec. 179, 374 N.E.2d 954 (1978), the court stated that a "foreign corporation's business within Illinois must be *related* to the cause of action in question before section 17(1)(a) will confer personal jurisdiction. If none of this business gives rise, *at least in part,* to the cause of action in question, then no such jurisdiction exists." [Emphasis added.] *See also Ballard v. Rawlins,* 101 Ill.App.3d 601, 604, 56 Ill.Dec. 940, 428 N.E.2d 532 (1981); *Chicago Film Enterprises v. Jablanow,* 55 Ill.App.3d 739, 742, 13 Ill.Dec. 466, 371 N.E.2d 161 (1977). Construing the phrase "arising from" as used in sections 17(1) and (3), the court in *Johnston v. United Presbyterian Church,* 103 Ill.App.3d 869, 59 Ill.Dec. 518, 431 N.E.2d 1275 (1981) stated that there must be a "sufficiently close *relationship* between the defendant's business activities in the State and the litigation against him." *Id.* at 872, 59 Ill.Dec.

518, 431 N.E.2d 1275 [Emphasis added.] Similarly, in *Ballard v. Rawlins,* 101 Ill. App.3d 601, 56 Ill.Dec. 940, 428 N.E.2d 532 (1981), the court concluded that jurisdiction is proper only if there exist "sufficient affiliating circumstances showing a *relationship* between the defendant, the State of Illinois and this lawsuit." *Id.* at 605, 56 Ill.Dec. 940, 428 N.E.2d 532 (Emphasis added.) Finally, in *Huffman v. Inland Oil & Transport Co.,* 98 Ill.App.3d 1010, 54 Ill.Dec. 306, 424 N.E.2d 1209 (1981), the court stated that "[t]he purpose of the limiting phrase 'arising from' is to insure that there is a close relationship between a cause of action against a non-resident corporation and the business activities through which it submitted to Illinois jurisdiction.... The minimum relationship required is that the plaintiff's suit be one which lies in the wake of the commercial activities by which the defendant submitted to the jurisdiction of Illinois courts." *Id.* at 1015–16, 54 Ill.Dec. 306, 424 N.E.2d 1209 (citations omitted).

Defendant points out that plaintiff is suing for declaratory relief. Defendant argues that, since it was in Ohio when it demanded payment, and since such demand is a prerequisite to plaintiff's suit, the action of necessity "arose from" acts performed in Ohio, not in Illinois. Hence, according to defendant, we lack jurisdiction under the Illinois long-arm statute. Whatever the merits of defendant's "last event" test, it is clear that Illinois courts do not regard it as controlling in contract actions. As the court stated in *Chicago Silver Exchange v. United Refinery, Inc.,* 394 F.Supp. 1332 (N.D.Ill.1975), the Illinois long-arm statute "requires that the activities which are relied on to sustain jurisdiction must give rise to the suit in question, at least in part." *Id.* at 1335 (citation omitted).

Exercise of jurisdiction by Illinois courts under the Illinois long-arm statute "depends upon the facts of each case." *Illinois National Bank v. Gulf States Energy Corp.,* 102 Ill.App.3d 1113, 1119, 57 Ill.Dec. 938, 429 N.E.2d 1301 (1981). The statute does not require Illinois courts to weigh Illinois contacts against out of state contacts. Rather, Illinois courts focus only upon the defendant's activity in Illinois, finding jurisdiction where such activities are sufficiently related to the suit filed even though there may be more activities in other jurisdictions. *See, e.g., id.* at 1120, 57 Ill.Dec. 938, 429 N.E.2d 1301. Given the Illinois courts' interpretation of the long-arm statute, an Illinois court could exercise jurisdiction over the defendant.

Defendant's argument that personal jurisdiction is here sought to be predicated solely upon NTN's activities in Illinois ignores Scott's and defendant's significant post-1975 Illinois contacts and depends, moreover, upon the fallacious assumption that everything that occurred prior to the 1975 agreement on which this lawsuit is based is irrelevant to the *International Shoe* minimum contacts analysis. However, the 1975 agreement is obviously a mere extension and continuation of the parties' ongoing contractual relations. *Lakeside Bridge & Steel Co. v. Mountain State Construction Co.,* 597 F.2d 596, 600–603 (7th Cir.1979), on which Scott, Inc. principally relies, is therefore not relevant here. Nor does the Seventh Circuit's recent decision in *Froning & Deppe, Inc. v. Continental Illinois National Bank & Trust Co.,* 695 F.2d 289, 293 (7th Cir.1982), that personal jurisdiction may not be founded *solely* on the "hypothetical amenability of a forum state plaintiff to a forum state suit initiated by a non-resident defendant" avail Scott, Inc. here in light of its extensive pre-1975 and not insignificant post-1975 Illinois contacts, all in furtherance of the contractual relationship that underlies this lawsuit.

Exercise of jurisdiction by an Illinois court would not violate the constitutional due process requirements set forth in *International Shoe.* Contrary to defendant's argument, jurisdiction is not here based upon plaintiff's "unilateral" performance in Illinois, but rather, upon defendant's activities in Illinois. Scott came to Illinois to visit NTN, pursuant to a business relationship between Scott, Inc. and NTN which was governed by the contract here in dispute. Thus, even ignoring any other contacts with Illinois, "defendant purposefully avail[ed] itself of the privilege of conducting activities within [Illinois], thus invoking the ben-

efits and protections of its laws. [citing *International Shoe*]" *Hanson v. Denkla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). It does not offend traditional notions of fair play and substantial justice to require Scott, Inc. to come once more to Illinois to defend a suit based upon a contract under which it has so frequently and willingly come to Illinois. We conclude that our exercise of jurisdiction over defendant is proper.

### VENUE

■ Much of defendant's argument against our exercise of jurisdiction is misdirected. The parties' contacts with Ohio and the weight of those contacts as against the Illinois contacts are irrelevant if jurisdiction is properly based upon defendant's contacts with Illinois. Such matters are, however, relevant to our determination of proper venue.

Under 28 U.S.C. § 1391(a), venue is proper only in the judicial district where all plaintiffs reside or all defendants reside, or in which the claim arose. Defendant, incorporated in Ohio, is a resident of Ohio. Plaintiff, although doing business principally in Illinois, is incorporated in New York. In a materially identical case, the Seventh Circuit has held that for venue purposes, under 28 U.S.C. § 1391(e), a corporate plaintiff "resides" only in the judicial district of its incorporation. *Reuben H. Donnelley Corp. v. FTC,* 580 F.2d 264, 270 (7th Cir.1978). Thus, venue is proper in this district only if the "claim arose" in this district.

■ We have already held that the claim "arose" in Illinois for purposes of Illinois long-arm jurisdiction. Plaintiff argues that since both the Illinois long-arm statute and 28 U.S.C. § 1391(a) impose identical requirements, a finding that jurisdiction is proper in Illinois is tantamount to a finding that venue is proper as well. The so-called "identity rule" has previously been applied in this district. Under similar facts, *Océ-Industries, Inc. v. Coleman,* 487 F.Supp. 548, 552 (N.D.Ill.1980), the court adopted the identity rule, holding that once jurisdiction is established under the Illinois long-arm statute, the venue requirements of 28 U.S.C. § 1391(a) are "necessarily" satisfied. *See also Bastille Properties, Inc. v. Hometels of America, Inc.,* 476 F.Supp. 175 (S.D. N.Y.1979) (applying the identity rule in connection with New York's long-arm statute).

■ The Supreme Court stated in *Leroy v. Great Western United Corp.,* 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1978), that the question of personal jurisdiction "goes to the court's power to exercise control over the parties" while venue "is primarily a matter of choosing a convenient forum." *Id.* at 180, 99 S.Ct. at 2714. Paraphrasing, jurisdictional rules tell us where a party may be sued, while venue rules tell us where such suit ought to be conducted. A state is not forbidden to enact a statute which permits its courts to exercise jurisdiction over foreign defendants only if federal venue would also be proper within the state. Under such a statute, application of the identity rule would be entirely appropriate. In our view, Illinois has not adopted such a statute.

The vice of the identity rule is apparent. Applying the "minimum contacts" test of *International Shoe* and the "transaction of any business . . . giving rise to [the action]" test of the Illinois long-arm statute, a court finds jurisdiction proper and from there, bootstraps into venue. The supposed virtue of the identity rule is that it permits "courts to get away from the frequent hypertechnical weighing of 'contacts' under § 1391." *Océ-Industries, Inc. v. Coleman, supra,* 487 F.Supp. at 5520. We are somewhat troubled by the *Océ-Industries* analysis. If a finding of proper venue under section 1391 requires that contacts be weighed, it is not clear to us that such requirement can be dispensed with by beginning with the jurisdictional inquiry.

Under our reading of the Supreme Court's opinion in *Leroy v. Great Western United Corp., supra,* our duty to weigh contacts, however "hypertechnical," cannot so easily be wished away. Section 1391(a) allows venue in "the judicial district . . . in which the claim arose." As the Court noted in *Leroy,* there is considerable disagreement as to whether the language of the statute requires a court to isolate the one and only

one district in which the claim arose. *Id.* at 184–85, 99 S.Ct. at 2716–17. The *Leroy* Court declined to decide whether section 1391 "adopts the occasionally fictive assumption that a claim may arise in only one district." *Id.* But the Court stated that only in an "unusual case" is it not clear that the claim arose in one specific district. *Id.* at 185, 99 S.Ct. at 2717. The *Océ-Industries* court disposed of *Leroy* in a footnote. We are less certain that under *Leroy* we may disregard contacts with other districts, basing venue upon defendant's Illinois contacts alone. Our finding, that defendant conducted business in Illinois sufficient to constitute "minimum contacts" with Illinois and giving rise "at least in part" to plaintiff's cause of action is not equivalent to a finding that Illinois, more than Ohio, is the locus of this action.

As an alternative to its holding under the identity rule, the *Océ-Industries* court held that under the traditional weighing of contacts approach, venue was proper in the Northern District of Illinois. While we acknowledge the identity rule, we will also weigh contacts and make a determination based thereon.

■ Accordingly, we must determine whether the claim arose more in Illinois than in Ohio. As stated earlier, defendant urges us to adopt what is in effect a "last event" test under which the claim would arguably arise in Ohio since defendant was in Ohio when it demanded payment. We reject this mechanical rule. We note that in tort actions Illinois state courts have sometimes applied a last event test. For example, where a water heater exploded in Illinois, causing injuries in Illinois, the Illinois Supreme Court upheld Illinois state court jurisdiction because the last event necessary to render the defendant liable took place in Illinois. *Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill.2d 432, 435, 176 N.E.2d 761 (1961). While the occurrence of a last event may provide a basis for jurisdiction, there is no suggestion that it constitutes the sole basis for jurisdiction. Further, the district in which an explosion, automobile accident or other tort occurs is a logical candidate for jurisdiction. Here, however, defendant could have demanded payment while in Illinois on business or at any other time or place. The demand for payment is obviously a different "event" than an explosion or accident. Finally, although the occurrence of a last event may be sufficient in certain cases to confer jurisdiction, it is of only trivial significance to a venue decision where, as here, the last event could have taken place anywhere and happened to occur in Ohio because the defendant unilaterally selected an Ohio mailbox.

Defendant has not cited, nor have we found, any authority which binds or persuades us to adopt the last event test as determinative of venue. Moreover, in the instant case, the argument is fallacious. It proceeds from the false premise that plaintiff's claim arises from a single action—defendant's demand for money. An action for declaratory judgment under 28 U.S.C. § 2201 requires, at the threshold, the existence of an "actual controversy." Granted, there might be no controversy here had the defendant never demanded payment. But likewise there would be no controversy if NTN had paid the amount demanded by Scott, Inc. To have a controversy, parties must disagree. Not Scott, Inc.'s demand for payment, but the parties' disagreement itself is what "gives rise" to this action.

We must look to the facts underlying the parties' dispute. Accordingly, our analysis must focus upon the parties' contract. Defendant signed the contract in Ohio. Hence, defendant urges that as a matter of "black letter law" the contract was formed in Ohio. Plaintiff apparently signed it in Illinois where the original contract between the parties was negotiated. Under the circumstances, we accord little weight to the place of signature.

The rights and obligations here in dispute arose not from the formation of the contract but from performance under it. The contract does not expressly require Scott, Inc. to perform any of its contract obligations in Illinois. Nor does the contract explicitly state that plaintiff must perform in Illinois. Nonetheless, the contract was performed at least in part in Illinois as well as in Ohio, Kentucky, Alabama, Arkansas, Georgia, Mississippi and Tennessee.

The subject matter of the contract was representation by Scott, Inc. of NTN in a territory encompassing six southern and midwestern states. Under the contract, Scott, Inc. solicited orders for NTN's products within those six states. Ohio was only one of the six states covered by the contract. Only one of the accounts here in dispute is located in Ohio. The other disputed accounts are located in Kentucky and Alabama. Insofar as the place of performance of contract obligations is relevant to venue determination, Ohio has no greater connection to the dispute than does Kentucky or Alabama.

Meetings between the parties took place, as defendant states, "for convenience," in Illinois. *Affidavit of Mr. Charles E. Scott*, paragraph 10. Defendant points out that plaintiff has several offices, but that the contract does not specify an address for NTN. Yet, defendant knew that, after signing the contract, it should return it to plaintiff's Illinois offices. The previous contract had been negotiated and executed in Illinois, previous meetings between the parties had occurred in Illinois, and a cover letter accompanying the proposed contract was mailed by NTN from Illinois, requesting that the contract be returned, signed, to Illinois.

Defendant states that much of its business with NTN was conducted "through" NTN's office in Atlanta, Georgia. We note that whatever the parties' contacts with Georgia, such contacts do not support venue in Ohio. Further, no business between Scott, Inc. and NTN could be conducted "through" Georgia until "accepted" by NTN in Illinois. *See* Contract, ¶ 5, and *Affidavit of Mr. E.R. Wallenberger*, ¶ 3. Scott, Inc.'s performance under the contract, the soliciting of orders, took place in six states. Those orders were not binding upon NTN until accepted by it in one state, Illinois.

■ Facts do not come neatly packaged with weights attached. We must look to the entire relationship between the parties, analyzing all the facts in light of that relationship, in order to determine where venue is proper. Doing so, we conclude that ven-

ue is proper in this district. Defendant dealt with plaintiff continuously over a period of many years. Defendant knew exactly what it was dealing with—a corporation doing business in Illinois, setting policy, signing contracts, making decisions, meeting with sales representatives, accepting orders, directing shipments and calculating and paying commissions in and from Illinois. Defendant knew that plaintiff would perform its contract obligations within Illinois. We do not minimize the parties' contacts with Ohio. We merely point out that in accordance with the parties' expectations, plaintiff's performance of the contract was centered in Illinois, while defendant's performance was scattered across six states. If, as *Leroy* suggests, we must select a single district in which the present claim "arose," we hold, for the foregoing reasons, that the claim arose in the Northern District of Illinois.

## CHANGE OF VENUE UNDER 28 U.S.C. § 1404(a)

■ Defendant's final contention is that the case should be transferred to the Southern District of Ohio as a more convenient forum pursuant to the provisions of 28 U.S.C. § 1404(a). The Southern District of Ohio is not a more convenient forum since any increased convenience to defendant by transfer of this case to Ohio will apparently be offset by increased inconvenience to plaintiff. The controversy between the parties apparently involves commissions with respect to three accounts handled by Scott, Inc., one in Ohio, one in Alabama and one in Kentucky. Whether or not any records or testimony of personnel of any of those business entities will be necessary is not now apparent. It may well be that the records and personnel of plaintiff and defendant will suffice. If more is required, a question may arise as to the relevant convenience of the two districts. At the present time, there appears to be little or no difference. In the absence of a clear difference in convenience, the plaintiff's choice of forum is determinative. Under those circumstances, we conclude that neither the convenience of the parties nor the interests of justice will be served by a transfer.

## CONCLUSION

Since we conclude that the Illinois long-arm statute, Ill.Rev.Stat. ch. 110, § 17(1)(a), is applicable to defendant, that venue properly rests in this district and that defendant has failed to establish any difference, much less a substantial one, in the convenience of the parties as between the Northern District of Illinois and the Southern District of Ohio, the defendant's motion to dismiss or transfer will be denied. An order to that effect will be entered.