Scott Russell OLSON, et al.,
Respondents,

v.

Albert C. MAGNUSON, personally and as agent for The Redeemer Covenant Church of Brooklyn Park, et al., Defendants,

The Evangelical Covenant Church of America, Appellant.

Nos. C8–90–281, CX–90–282, C1–90–283, C3–90–284, C5–90–285 and C7–90–286.

Court of Appeals of Minnesota.

June 12, 1990.

Charles W. Faulkner, Faulkner & Faulkner, Minneapolis, Jeffrey R. Anderson, Susan Bedor, Reinhardt and Anderson, St. Paul, James W. Kerr, McDonald & Kerr, Minneapolis, for respondents.

Gerald H. Hanratty, Minneapolis, for appellant.

Considered and decided by LANSING, P.J., and FOLEY and SHORT, JJ.

## OPINION

LANSING, Judge.

These cases, consolidated for purposes of appeal, are grounded on complaints by six individuals alleging that Albert Magnuson committed sexual abuse while serving as minister at Redeemer Covenant Church in Brooklyn Park, Minnesota. Appellant Evangelical Covenant Church of America (ECC), an Illinois corporation, is named as a defendant in the complaints for its alleged failure to adequately supervise Magnuson. ECC unsuccessfully moved to dismiss for lack of personal jurisdiction, and this appeal followed. We affirm.

## FACTS

ECC is a body of evangelical churches, administratively organized into regional conferences. Rights and duties at the national, regional and local levels of this body are dictated by ECC's constitution, its bylaws, and other rules and regulations. ECC bylaws specifically provide for the formation of a Board of Ministry which is to exercise "general supervision over Covenant ministers, including ordination, license, discipline, and the maintenance of high ministerial standards." ECC is responsible for investigating claims of impropriety lodged against its local church ministers[1] and administering discipline if deemed necessary. Such discipline may include counseling, training, temporary removal from ministerial functions, or permanent dismissal from the Covenant ministry. It appears from ECC's rules and regulations that a person who is dismissed from the Covenant ministry is prohibited from serving in the clergy of a Covenant local church.

Redeemer Covenant Church is a member of the Northwest Conference of the ECC. From 1964 to 1989, Magnuson served as Redeemer's minister. In November, 1987, the Superintendent of the Northwest Conference was informed that Magnuson had sexually abused one of the respondents three years earlier. This information was relayed to ECC, which promptly "evaluated" Magnuson. Upon discovering new evidence of sexual abuse, ECC arranged a meeting with Magnuson at which Magnuson was asked to take an early retirement. Sometime thereafter, ECC suspended Magnuson from all pastoral duties and counseling activities pending completion of its investigation. On January 18, 1989, Magnuson tendered his resignation.

Following the tender of Magnuson's resignation, each of the six respondents commenced a lawsuit against ECC and other parties. The complaints alleged that the respondents were sexually abused by Magnuson and that this abuse was caused by ECC's negligent supervision of the minister. ECC moved to dismiss for lack of personal jurisdiction, but its motions were denied. On appeal, ECC contends that under the due process clause of the United States Constitution, it is not subject to the jurisdiction of Minnesota courts.

## ISSUE

Did the trial courts' exercise of personal jurisdiction over the Evangelical Church of

---

**1.** The regional conferences also share responsibility in investigating charges against Covenant ministers.

America violate the due process clause of the United States Constitution?

## ANALYSIS

■ Before a Minnesota court may exercise personal jurisdiction over a non-resident defendant, it must determine first whether our long-arm statute, Minn.Stat. § 543.19, is satisfied, and second, whether the exercise of jurisdiction is consistent with due process. *Sherburne County Social Services v. Kennedy*, 426 N.W.2d 866, 867 (Minn.1988). ECC does not dispute that the claims at issue are within the scope of Minnesota's long-arm statute and we confine our analysis to whether the trial courts' exercise of jurisdiction offends due process.

■ The due process standard for determining whether a non-resident defendant is subject to the jurisdiction of a state's courts was established in *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The court ruled that jurisdiction may not be exercised unless the defendant has minimum contacts with the forum state, "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Id.* This traditional minimum contacts test is applicable to lawsuits against religious organizations, notwithstanding the freedom of religion guarantees under the first amendment of the United States Constitution. *General Council on Finance and Administration of the United Methodist Church v. Superior Court of California*, 439 U.S. 1355, 1373, 99 S.Ct. 35, 38, 58 L.Ed.2d 77 (1978).

To have minimum contacts, the defendant must have performed some act by which it "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). The defendant's connection with the forum state must be such that it "should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567,

62 L.Ed.2d 490 (1980). These requirements ensure that a defendant will not be subjected to a state court's jurisdiction "solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.' " *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (citations omitted).

■ The Supreme Court has recently distinguished between "specific jurisdiction", which may exist when the cause of action arises out of or is related to the defendant's contact with the forum state, and "general jurisdiction", which may exist even though there is no connection between the cause of action and the jurisdictional facts. *Burger King*, 471 U.S. at 473 n. 15, 105 S.Ct. at 2182 n. 15. The threshold of contacts required for the exercise of specific jurisdiction is lower than that required for general jurisdiction. Under this lower threshold, parties who "reach out beyond one state and create continuing relationships and obligations with citizens of another state" may be haled into the other state's courts for consequences arising from such contacts. *Id.*, 471 U.S. at 473, 105 S.Ct. at 2182; *Compare Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

■ In Minnesota, a five-factor test is used to determine whether there are adequate minimum contacts to support the exercise of personal jurisdiction. The court must consider:

(1) The quantity of the contacts with the forum state,

(2) The nature and quality of the contacts,

(3) The source and connection of the cause of action with these contacts,

(4) The interest of the state providing a forum,

(5) The convenience of the parties.

*Rostad v. On–Deck, Inc.*, 372 N.W.2d 717, 719–720 (Minn.1985) *cert. denied*, 474 U.S. 1006, 106 S.Ct. 528, 88 L.Ed.2d 460 (1985). Our analysis of these factors and of the general principles underlying the minimum

contacts test leads us to conclude that the courts of this state may constitutionally exercise specific jurisdiction over ECC with respect to these complaints.

■ In reaching this conclusion, we have relied on the analytical framework found in *Burger King.* In *Burger King,* a franchisor incorporated in Florida brought suit in Florida against a Michigan resident with whom it had entered into a 20–year franchise contract. The Court adopted a "contract-plus" framework to determine whether the Michigan resident's contacts with Florida satisfied the requirements of due process. Under this framework, a contract between parties of different states does not, by itself, establish sufficient minimum contacts such that jurisdiction may be exercised in either party's home state. *Id.,* 471 U.S. at 479, 105 S.Ct. at 2185. Rather, one must look beyond the mere existence of the contract and consider the following factors: prior negotiations between the parties; contemplated future consequences of the parties' contractual relationship; the terms of the contract; and the parties' actual course of dealing. *Id.* The Court concluded, after weighing these factors, that Florida's exercise of jurisdiction did not violate due process. It emphasized that (1) the Michigan resident had "entered into a carefully structured 20–year relationship that envisioned continuing and wide-reaching contacts" with the franchisor in Florida, and (2) the Michigan resident's failure to comply with the franchise agreement caused foreseeable injuries in Florida. *Id.,* 471 U.S. at 480, 105 S.Ct. at 2186.

In applying this analysis to ECC, instead of addressing the constitutional ramifications of a contract between parties of different states, we must examine the effect of a legal relationship between a national religious organization and one of its constituent members. Notwithstanding this shift in focus, *Burger King* still provides an appropriate framework by which ECC's contacts with Minnesota may be measured.

■ We conclude, initially, that a local church's membership in a national religious organization does not, by itself, automatically establish sufficient minimum contacts by the national organization to support jurisdiction in the local church's home forum. In addition to membership, the relationship is defined by prior negotiations, contemplated future consequences, the terms of the membership, and the parties' actual course of dealing. All of these factors are highly pertinent to a determination of whether the national organization has " 'purposefully directed' [its] activities at residents of the forum * * *." *Burger King,* 471 U.S. at 472, 105 S.Ct. at 2182.

■ Rules and regulations governing the legal relationship between ECC and Redeemer establish that ECC assumed responsibility for the discipline of Redeemer's ministers. ECC contemplated that in the event a minister at Redeemer was charged with sexual abuse, it would become involved in the subsequent investigation and would regulate the minister's privilege to carry out pastoral duties at Redeemer. The actual course of dealing between ECC and Redeemer illustrates ECC's authority over Redeemer's ministers. After learning of Magnuson's alleged misconduct, ECC was in complete charge of the ensuing investigation and disciplinary action. ECC "reinforced [its] deliberate affiliation with the forum State", *Id.,* 471 U.S. at 482, 105 S.Ct. at 2187, by administering discipline against Magnuson and by arranging a meeting with him at which further disciplinary steps were discussed.

ECC's continuing obligations to Redeemer Covenant Church persuade us that its contacts with Minnesota were by no means "random," "fortuitous," or "attenuated." In our view, its contacts with Minnesota were sufficiently significant so that ECC had "fair warning" that it would be made subject to Minnesota's jurisdiction for litigation arising out of its alleged failure to adequately investigate and discipline a minister at Redeemer Covenant Church.

ECC has failed to point to any factors which might outweigh the considerations we have addressed. ECC does not challenge the respondents' assertion that Minnesota has a legitimate interest in providing a forum for these claims. Nor does ECC contend that jurisdiction would be in-

convenient. The constitutionality of haling ECC into a Minnesota court is bolstered by this absence of countervailing factors.

Finally, we note that an Illinois appellate court, in a case with similar facts, adopted essentially the same reasoning. Although the court appears to have relied on concepts of general jurisdiction, it analyzed similar factors in holding that the United Presbyterian Church, by advising, instructing and directing one of its local churches, had sufficient minimum contacts with the local church's home state to establish jurisdiction for a case involving the local church's dismissal of its minister. *See Johnston v. United Presbyterian Church, Inc.,* 103 Ill.App.3d 869, 59 Ill.Dec. 518, 431 N.E.2d 1275 (1981). We believe that our analysis, like the analysis in *Johnston,* gives due regard to the jurisdictional limitations imposed by the due process clause of the United States Constitution.[2]

### DECISION

The trial courts did not err in ruling that ECC may be made subject to jurisdiction in this state's forum for purposes of determining its liability for sexual abuse injuries arising out of its alleged negligent supervision of a minister at a Minnesota Covenant church.

Affirmed.

---

**2.** For other cases on this subject, see 26 ALR4th 1168; *McLean v. Church of Scientology of California,* 538 F.Supp. 545 (M.D.Fla.1982); *Does 1–9 v. Compcare, Inc.,* 52 Wash.App. 688, 763 P.2d 1237 (1988).